No. 41,118

Panhandle Eastern Pipe Line Company, a Corporation, *Appellee,* v. Richard T. Fadely, State Treasurer of Kansas; Marion Beatty, Chairman, Harry G. Wiles and Richard C. Byrd, Commissioners, Comprising the Kansas Corporation Commission, *Appellants.*

(332 P. 2d 568)

Opinion filed December 6, 1958.

*Robert C. Londerholm,* Assistant Attorney General, argued the cause, and *John Anderson, Jr.,* Attorney General, was with him on the brief for appellant. *Richard T. Fadely,* Treasurer of the State of Kansas; *Hartzel J. Whyte,* Assistant General Counsel, argued the cause, and *Clyde E. Milligan,* General Counsel, and *Joyce R. Tyler,* Assistant General Counsel, were with him on the briefs for appellant Kansas Corporation Commission.

*Jeff A. Robertson,* of Kansas City, Missouri, argued the cause, and *C. A. Conoley,* of Kansas City, Missouri, and *C. C. Linley,* of Liberal, were with him on the brief for the appellee.

The opinion of the court was delivered by

WERTZ, J.: This was an action by Panhandle Eastern Pipe Line Company (plaintiff-appellee) against the state treasurer and the state corporation commission (defendants-appellants) for a declaratory judgment holding senate bill No. 425 (L. 1957, ch. 43) and the second sentences of sections 2, 3 and 5 of senate bill No. 428 (L. 1957, ch. 312) of the 1957 legislature unconstitutional and void. Senate bill No. 425 directed the treasurer to transfer $100,000 from the unexpended balance in the natural gas conservation fund of the state corporation commission to the state general revenue fund. The challenged portions of senate bill No. 428 (G. S. 1957 Supp., 55-609, 55-711 and 55-131) are amendments to G. S. 1949, 55-609 and 55-711, and G. S. 1955 Supp., 55-131, and direct the treasurer to credit to the general fund twenty per cent of all costs collected by the commission pursuant to those statutes, with the remaining eighty per cent to be deposited in a special fund for the use of the commission in administering the provisions of the statutes. The trial court found the challenged statutes unconstitutional and enjoined defendants from carrying out the mandates of senate bill No. 425 and the second sentences of sections 2, 3 and 5 of senate bill No. 428, from which judgment defendants appeal.

The pertinent portions of G. S. 1949, 55-609 and 55-711, and G. S. 1955 Supp., 55-131, as amended, are as follows:

55-609. . . . "The corporation commission is hereby authorized and directed to tax and assess against the parties involved in any hearing or application the costs incurred therein and also, all costs to the state incurred in making necessary investigations and in enforcing its orders under this act and the cost of plugging abandoned wells as provided for in section 55-140 of the General Statutes Supplement of 1955, and any amendments thereto, . . . All such costs collected by the corporation commission shall be paid into the state treasury, and the state treasurer shall credit twenty percent (20%) thereof to the general fund of the state, and the remaining eighty per-

cent (80%) shall be deposited in a special fund for the use of the corporation commission in administering the provisions of this act."

55-711. . . . "The state corporation commission is hereby directed to tax and assess against the parties involved in any hearing or application the costs incurred therein, also all costs to the commission incurred in making the necessary investigations and the enforcement of its orders under this act, . . . All such costs collected by the corporation commission shall be paid into the state treasury, and the state treasurer shall credit twenty percent (20%) thereof to the general fund of the state, and the remaining eighy percent (80%) shall be deposited in a special fund for the use of the corporation commission in administering the provisions of this act."

55-131. . . . "The state corporation commission is hereby authorized and directed to assess the actual costs and expenses incurred herein in the supervision of the abandonment of any well or hole affected by the terms of this act . . . All such costs and expenses collected by the corporation commission shall be paid into the state treasury, and the state treasurer shall credit twenty percent (20%) thereof to the general fund of the state, and the remaining eighty percent (80%) shall be deposited in a special fund for the use of the corporation commission in administering the provisions of this act."

On December 31, 1947, prior, of course, to the 1957 amendments, the corporation commission promulgated its rules 82-2-116 and 82-2-216, which levied assessments to pay the conservation division expenses and other costs in connection with the administration of the gas conservation laws, as authorized by 55-609 and 55-711. On June 17, 1953, the commission promulgated rule 82-2-315, which levied assessments as authorized by 55-131. On September 12, 1956, by appropriate order, the commission reduced the assessments provided for under rule 82-2-216 by twenty-five per cent, after a finding that the funds provided by the existing assessments were in excess of an adequate and sufficient amount to pay the conservation division expenses and other costs in connection with the administration of the gas conservation laws.

On July 1, 1957 (the date of the transfer contemplated by senate bill No. 425) there was approximately $161,000 in the commission's natural gas conservation fund, all of which had been assessed and paid under rule 82-2-216. Subsequent to the transfer of the $100,000 from the conservation fund to the general fund under senate bill No. 425, the commission, by its order dated April 30, 1958, rescinded its order of September 12, 1956, whereby the crude oil and natural gas assessment was reduced by twenty-five per cent, and restored its former order of assessment.

Plaintiff Panhandle maintains the transfer of $100,000 to the gen-

eral fund contemplated by senate bill No. 425 (L. 1957, ch. 43) is an attempt to raise revenue under the guise of the police power and therefore constitutes a discriminatory burden on interstate commerce, deprives plaintiff of its property without due process of law, and denies it equal protection, in contravention of the Fourteenth Amendment of the Federal constitution, and violates article 11, sections 1 and 5 of the Kansas constitution. It contends further that the exaction by the state for the general revenue fund of twenty per cent of all costs collected by the commission under 55-131, 55-609 and 55-711, as amended, is an attempt to raise revenue under the guise of the police power and as such violates the commerce clause and the Fourteenth Amendment of the Federal constitution. The essence of plaintiff's argument is that the money assessed and paid by virtue of rule 82-2-216 was levied for the definite object expressed in the statute, and the transfer of $100,000 of this money to the general fund would cause it to be applied for an entirely different purpose. Similarly, the assessments under the three challenged statutes are to defray the costs and expenses of the commission, and the diversion of twenty per cent to the general fund is for other purposes which in effect requires the commission to levy twenty per cent more than is necessary to cover its costs and expenses.

The state, on the other hand, maintains that the commission receives indirect assistance from other departments and agencies of the state when it carries out its duties under the oil and gas laws, that the commission is empowered to collect fees to recompense these other departments, and that the apportionment by the state to the general fund of twenty per cent of all costs collected by the commission is to cover these indirect expenses. The state asserts that neither the Federal nor the state constitution prohibits the legislature from seeking reasonable recompense for the assistance in regulation and supervision rendered by other departments.

At the outset, it is clear that under its police power the state may reimburse itself for the costs of otherwise valid regulation and supervision by charging the necessary expenses to the businesses or persons regulated. (State, ex rel., v. Cumiskey, 97 Kan. 343, 352, 155 Pac. 47; Gt. Northern Ry. v. Washington, 300 U. S. 154, 160, 57 S. Ct. 397, 81 L. Ed. 573.) A statute, however, is void if it shows on its face that some part of the exaction is to be used for a purpose other than the legitimate one of supervision and regulation (Gt. Northern Ry. v. Washington, supra, pp. 160-161), or if more than

adequate remuneration is secured (*State, ex rel., v. Cumiskey,* supra; *State, ex rel., v. Ross,* 101 Kan. 377, 166 Pac. 505). Where interstate commerce is involved and the statute shows that expenses other than those of legitimate supervision and regulation are defrayed from the assessments levied on the regulated businesses, or the income derived from the fees collected so far exceeds the expenses of regulation as to impugn the good faith of the law, it cannot stand, either under the commerce clause or under the Fourteenth Amendment to the Federal constitution. (*Gt. Northern Ry. v. Washington,* supra, pp. 160-161.)

In the instant case, sections 55-609, 55-711 and 55-131, as amended, do not clearly authorize the commission to collect both its direct expenses and the indirect expenses of regulation resulting from the assistance of other departments and agencies.

While the state contends that prior to the 1957 amendments the commission was assessing regulated businesses for both direct *and* indirect expenses of regulation, it is apparent that prior to 1957 no funds were channeled to the general fund from the amounts collected by the commission. We cannot presume that indirect expenses were collected by the commission and unlawfully retained by it. Although it is not conclusive, the fact that in April, 1958, the commission rescinded the September 12, 1956, order reducing assessments by twenty-five per cent and reinstated the original rate of assessment indicates that prior to the amendments only direct expenses were collected and subsequently increased assessment was necessary to cover the direct expenses and the twenty per cent to be allocated to the general fund. We must presume the statutes before amendments provided only for the assessment of direct costs by the commission, that the commission collected only those costs, and that the sections unchanged by the 1957 amendments provide only for collection of direct costs.

Although the unchanged portions of 55-609, 55-711 and 55-131 do not authorize the collection of indirect expenses, the state would appear to maintain the amendments providing for the allocation of twenty per cent to the general revenue fund in themselves authorize the collection of indirect expenses and the $100,000 appropriated by senate bill No. 425 is to reimburse the state for indirect expenses.

We cannot accept this contention. Neither senate bill No. 425 nor senate bill No. 428 expressly declares that the amounts transferred and appropriated to the state general revenue fund are to be used to reimburse other departments and state agencies for

indirect assistance rendered the commission, nor do the bills specifically appropriate the amounts for such purpose. Both bills, in clear terms, direct payment of the mentioned funds to the general fund of the state without any limitation, and the most reasonable inference to be drawn from both legislative acts is that the $100,000 and the twenty per cent are to be used indiscriminately for all general expenses and obligations of the state. Such legislative acts, in spite of the presumption of validity (*State, ex rel., v. Fadely,* 180 Kan. 652, 659, 308 P. 2d 537), show on their face that some part of the exaction is to be used for a purpose other than the legitimate one of regulation, and for that reason senate bill No. 425 and the second sentences of sections 2, 3 and 5 of senate bill No. 428 are void.

When a regulatory measure openly becomes a revenue enactment, that portion thereof which exacts revenue fails as a valid exercise of the police power. We are of the opinion that senate bill No. 425 and the second sentence of sections 2, 3 and 5 of senate bill No. 428 amount to a tax and a revenue measure levied under the guise of a regulatory fee, and violate article 11, section 1 of our state constitution, the commerce clause and the Fourteenth Amendment of the Federal constitution. It therefore follows that the judgment of the trial court is affirmed.

It is so ordered.