No. 43,179

KENNETH E. GRIGSBY, F. W. MARTINIK, F. J. FINLEY, L. W. BLANA-BARD, JAMES PITTY, MARVIN FOSTER, FRED POJE, K. CONNER, ALVIS RANDOLPH, FLOSSIE MARIPIN, B. E. GREENWOOD, NEAL SCOTT, HENRY F. DOYLE, ALBERT POJE, E. S. FABAC, PAUL PAINE, ELWOOD PHILLIPS, S. E. PHILLIPS, D. C. RICHARDS, ED HAMEL, FRANK E. PRINGLE and JAMES B. VAN FLEET, JR., *Appellees,* v. PAUL F. MITCHUM, Mayor of the City of Kansas City, Kansas, EARL B. SWARNER, Health and Finance Commissioner of the City of Kansas City, Kansas, JOSEPH P. REGAN, Street Commissioner of the City of Kansas City, Kansas, JOHN THEROFF, Chief of Police of the City of Kansas City, Kansas, and JOHN O. SLAUGHTER, Chief, License Department of the City of Kansas City, Kansas, *Appellants.*

(380 P. 2d 363)

Opinion filed April 6, 1963.

*George W. Haley,* of Kansas City, argued the cause, and *C. W. Brenneisen, Jr.,* City Attorney, *Joseph A. Bukaty, James B. Flack* and *Matthew G. Podrebarac,* all of Kansas City, were with him on the brief for the appellants.

*William M. Cook,* of Kansas City, argued the cause, and *Roy Cook,* also of Kansas City, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action challenging the constitutional validity of a municipal ordinance of Kansas City, Kansas, requiring

a license for the operation of pinball machines. The trial court held the ordinance unconstitutional, and appeal has been duly perfected by the city.

The plaintiffs (appellees) operate small businesses varying in type within the confines of the city of Kansas City, Kansas. Most of them have coin-operated amusement devices known as pinball games located in or on the premises where they conduct their business. Their regular business is entirely separate and apart from these coin-operated amusement devices, although these devices do produce additional income.

By their amended petition the plaintiffs set forth material facts including the ordinance in question and state that most of the plaintiffs have purchased $250 Federal tax stamps in connection with their operation of these pinball games; that these stamps were purchased when plaintiffs were informed by Federal agents that all such coin-operated devices were subject to the $250 Federal tax, whether there was gambling on such devices or not. They allege the rule-making authority of the Federal Revenue Bureau adopted a regulation making coin-operated devices of the type operated by plaintiffs subject to this $250 tax, irrespective of whether the device was used for gambling of any kind. This rule was promulgated pursuant to U. S. C. A., Title 26, § 4462 (a) (2).

The ordinance in question was adopted on the 16th day of November, 1961, by the city commissioners of Kansas City, Kansas. The portion material to this appeal reads as follows:

"ORDINANCE No. 43040

"An Ordinance regulating and imposing a license fee for the privilege of keeping or operating coin-operated amusement devices, providing for the revocation of such license, and providing penalties for violation thereof.

"Be it Ordained by the Governing Body of the City of Kansas City, Kansas:

"SECTION 1. Any person, firm or corporation displaying for public patronage or keeping for operation any coin-operated amusement device shall be required to obtain a license from the City of Kansas City, Kansas, upon payment of a license fee. Amusement devices shall include but not be limited to pinball machines.

"SECTION 2. Applications. Application for such license shall be made to the City License Department upon a form to be supplied by the License Department. The application for such license shall contain but not be limited to the following information:

"(a). Name and address of the applicant, age, date and place of birth. Name and address of owner of machine.

"(b). Place where machine or device is to be displayed or operated and the business conducted at that place.

"(c). Description of machine to be covered by the license, mechanical features, name of manufacturer, serial number.

"(d). Whether applicant or owner has paid a current $250.00 federal occupational tax for the use or permit to use on any place or premises in Kansas City, Kansas, a coin-operated amusement or gaming device under the Federal Internal Revenue Code (Title 26), Paragraph (2) of Section 4461 (a) of the United States Code Annotated. *No license shall be issued to any applicant, and the license if issued shall be revoked, whenever the applicant or owner has paid a $250.00 current federal occupational tax for the use or permit to use on the place or premises where the machine or device is to be displayed, a coin-operated amusement or gaming device under the Federal Internal Revenue Code (Title 26), Paragraph (2) of Section 4461 (a) of the United States Code Annotated.*

"SECTION 3. Inspection. Application for license shall be made out in duplicate, one copy being referred to the Chief of Police, and the other copy to the City Electrical Inspector.

"(a). The Chief of Police shall investigate the location where it is proposed to operate such machine, ascertain if the applicant is a person of good moral character, and either approve or disapprove the application.

"(b). The Electrical Inspector shall inspect all wiring and connections to the machine, determine if the same complies with the Electrical Code of the City and shall either approve or disapprove the application.

"(c). No license shall be issued to any applicant unless approved by the Chief of Police and the Electrical Inspector." (Emphasis added.)

The ordinance provided for an annual license fee of $10 on each machine for the privilege of operating or maintaining for operation each coin-operated mechanical amusement device, and provided for a penalty, in addition to the revocation of the license, of a fine of not more than $300. It provided that each day the ordinance was violated would constitute a separate offense. Other provisions relative to the enforcement of the ordinance are immaterial to this appeal.

By their amended petition the plaintiffs seek both temporarily and permanently to enjoin the enforcement of the ordinance because the defendants threaten to arrest, or cause to be arrested, those in violation of the foregoing ordinance who possess a $250 Federal tax stamp. The amended petition further enumerates the constitutional grounds upon which they challenge the validity of the ordinance.

Upon joinder of issues and after hearing the case, the trial court held the ordinance to be unconstitutional and permanently enjoined the city from enforcing it for the reasons (1) that the

provisions of section 3 (c) are fatal to the validity of the ordinance; and (2) "That Section 3 (c) cannot be deleted and the rest of Ordinance No. 43040 stand for the reason that the City is without power to enact an ordinance providing that a City license on a pinball machine shall not be issued to one who has purchased a $250 federal occupational tax stamp."

The appeal to this court presents the questions hereafter discussed.

The portion of the ordinance primarily under attack in this lawsuit is the second part of section 2 (d), heretofore quoted in italics.

The occupational tax on coin-operated devices is imposed by the provisions of U. S. C. A., Title 26, § 4461. It provides:

"There shall be imposed a special tax to be paid by every person who maintains for use or permits the use of, on any place or premises occupied by him, a coin-operated amusement or gaming device at the following rates:

"(1) $10 a year, in the case of a device defined in paragraph (1) of section 4462(a);

"(2) $250 a year, in the case of a device defined in paragraph (2) of section 4462(a); and

"(3) $10 or $250 a year, as the case may be, for each additional device so maintained or the use of which is so permitted. If one such device is replaced by another, such other device shall not be considered an additional device."

A " 'coin-operated amusement or gaming device' " is defined in U. S. C. A., Title 26, § 4462 (a) as:

"(1) any amusement or music machine operated by means of the insertion of a coin, token, or similar object, and

"(2) so-called 'slot' machines which operate by means of insertion of a coin, token, or similar object and which, by application of the element of chance, may deliver, or entitle the person playing or operating the machine to receive cash, premiums, merchandise, or tokens."

From the foregoing the $250 special tax is imposed only on such coin-operated amusement or gaming devices as are defined in section 4462 ('a) (2), supra. The city ordinance is not designed to prohibit the use of such machines as are defined in section 4462 (a) (1), supra, provided the owners comply with the city ordinance and procure a license.

While the purpose of the ordinance is not expressly stated, it is evident from a reasonable interpretation that it is designed to curb gambling on pinball machines in Kansas City, Kansas.

Both the state legislature and this court have made it clear

that gambling is illegal in Kansas. (G. S. 1949, 21-915, 21-916, 21-918, 13-430, and G. S. 1961 Supp., 41-2708 [g].) In *Clemons v. Wilson*, 151 Kan. 250, 98 P. 2d 423, the court stated:

". . . it is the policy of this state to do everything possible to suppress gambling. . . ." (p. 256.)

It is an established principle of law that articles which lend themselves to illegal uses are subject to the police powers of the state and municipalities.

In *City of Wichita v. Stevens*, 167 Kan. 408, 207 P. 2d 386, it was held that a city under its police power had authority to prohibit the possession of punchboards even though such punchboards were in warehouses and were not used for gambling. The court said:

". . . Under such an ordinance there was no occasion to determine as a question of fact whether punchboards were or were not gambling devices. In any event they were an instrument which the city determined was detrimental to the peace and welfare of the city, and within its police power the city may prohibit possession of them. . . ." (p. 413.)

The trial court stated the sole question presented by the ordinance was whether the city could refuse to license a pinball machine to an operator who has purchased a Federal tax stamp.

Prohibiting a license on the ground that the applicant holds a certain type of Federal tax stamp is not a new type of legislation. As early as 1937 the Kansas legislature passed a law providing that the county commissioners or the governing body of the city shall revoke any cereal malt beverage license "for purchasing or displaying a federal retail liquor tax stamp." This provision is part of our present cereal malt beverage law. (G. S. 1961 Supp., 41-2708.) An analogous situation is found in G. S. 1949, 41-1004. (See, *State v. Nesbitt*, 191 Kan. 142, ___ P. 2d ___.)

In *Deitch v. City of Chattanooga*, 195 Tenn. 245, 258 S. W. 2d 776, the Tennessee court held that a city ordinance prohibiting possession of a Federal wagering stamp is constitutional. The court quoted from another Tennessee decision as follows:

" 'There is a direct and open connection between the possession of a federal license authorizing the retail sale of intoxicating liquors and the ultimate fact of such sale. The interests of men are such, and experience teaches, that they do not ordinarily incur the expense and trouble of procuring license to engage in the sale of intoxicants, unless they intend to do so. Apart from the statute making the possession of such license prima facie evidence of the fact of a sale, the inference might well be drawn, in the

absence of all rebutting proof, that one who pays the fees and possesses himself of such license is engaged in the sale of intoxicants.' *Brinkley V. State,* 125 Tenn. 371, 386, 143, S. W. 1120, 1123." (pp. 248, 249.)

In *Murphy v. California,* 225 U. S. 623, 56 L. Ed. 1229, 32 S. Ct. 697, the city of South Pasadena, California, in the exercise of its police power, passed an ordinance which prohibited all persons from maintaining a room where pool or billiard tables were kept, but permitted hotels, under the conditions specified in the ordinance, to provide such a room for the use of their guests. Murphy, who operated a pool room which was not connected with a hotel, was convicted for violating the ordinance. He contended before the United States Supreme Court that the ordinance violated the Fourteenth Amendment. In rejecting the contention the United States Supreme Court said:

"The Fourteenth Amendment protects the citizen in his right to engage in any lawful business, but it does not prevent legislation intended to regulate useful occupations which, because of their nature or location, may prove injurious or offensive to the public. Neither does it prevent a municipality from prohibiting any business which is inherently vicious and harmful. But, between the useful business which may be regulated and the vicious business which can be prohibited lie many non-useful occupations, which may, or may not be harmful to the public, according to local conditions, or the manner in which they are conducted." (pp. 628, 629.)

A case involving the seizure of numerous pinball devices, some of which provided neither pay-off nor free play, and others which issued no prizes but had a mechanism which could award free play, is *Sternall v. Strand,* 76 C. A. 2d 432, 172 P. 2d 921. There the court held there was nothing in the record to show the board of supervisors in San Diego County was not cognizant of conditions which reasonably called for action of this nature, or that the board acted beyond what was reasonable in view of conditions, either known or believed by it to require action, even to the extent of prohibiting the mere possession of machines and devices which can and are so easily and frequently changed from an ostensibly innocent use to one which is not only evil in itself, but which, as a practical matter, encourages and leads to many other evils, against all of which the board was attempting to guard. The question of the reasonableness of an ordinance was said to be primarily one for the legislative authority.

In *Terry v. City of Portland et al.,* 204 Or. 478, 269 P. 2d 544, the Oregon court held a statute imposing a privilege tax of

$50 per annum on every coin-in-the-slot device, enacted in the exercise of the state's power to tax, does not prevent the city of Portland from adopting an ordinance prohibiting the ownership, operation and use of any coin-in-the-slot device, which was aimed not only at machines of gambling nature but also at machines that do not provide pay-off or free play, notwithstanding that the ordinance, if enforced, would diminish the state's revenue.

In support of the trial court's decision that the ordinance is unconstitutional, the appellee argues the Federal Government has classified pinball machines as gambling devices requiring the payment of a $250 Federal stamp. This is evidenced by the regulations shown in the Code of Federal Regulations, Title 26, § 45.4462-1 (b), wherein it states:

"(2) *Examples of machines or devices within scope of section 4462 (a)* (2). The following devices and machines illustrate the type of machines or devices within the scope of section 4462 (a) (2):

"(i) A machine which is operated by means of the insertion of a coin, token, or similar object and which, even though it does not dispense cash or tokens, has the features and characteristics of a gaming device whether or not evidence exists as to actual payoffs.

. . . . . . . . . . . . .

"(iii) A pinball machine equipped with a push button for releasing free play and a meter for recording the plays so released, or equipped with provisions for multiple coin insertion for increasing the odds.

"(iv) Pinball machines in connection with which free plays are redeemed in cash, tokens, or merchandise, or prizes are offered to any person for the attainment of designated scores."

In 1942 the provisions of G. S. 1949, 21-1508, were before the court in *State v. Waite,* 156 Kan. 143, 131 P. 2d 708. The defendant was charged with violation of the statute and the question was whether the particular machine or device in question was a gambling device within the statutory definitions. The court held the particular "pin-ball" machine or device there described, which in no case paid off in money or tangible property, but gave the players who made certain scores additional free games, was not a gambling device because the privilege of such additional entertainment or amusement was not "property" within the meaning of the statute. The court said it was dealing with a criminal statute and strict construction must be applied.

The statute made it a criminal offense for a person to set up or keep in a public or private place *any gambling device, devised and*

*designed* for the purpose of playing any game of chance for money or property.

Later the court in *State v. One Bally Coney Island No. 21011 Gaming Table,* 174 Kan. 757, 258 P. 2d 225, observed that the legislature had met in general session on six different occasions since the *Waite* case and made no change in the statute (21-1508, *supra*). If the court was incorrect in construing the purpose and intent of the act, it was said the legislature had abundant opportunity to give further expression to its will, and that its failure to act amounted to a ratification of the interpretation placed upon the act by the court. Accordingly, the court held the particular "pinball" machine or device there described was not a gambling device and subject to seizure and destruction as such under G. S. 1949, 21-925.

The appellees rely on the two foregoing cases and say, if the legislature had the desire to classify pinball machines as gambling devices, it could easily have done so. The appellees ask, "how then does a pinball machine which does give free games, and which the Court in *State v. Waite* held is not *prima facie* a gambling device, become a matter in which the city can discriminate against a merchant for the operation thereof in his establishment? Does this action deny the appellees the equal protection of the law? Does it not deprive the appellees of property without due process of law? Does it not invade the province of the judiciary in determining the matter as wrongful, for our Court has ruled to the contrary, and in assessing penalties does it not invade the province of a jury in fact finding as to the guilt or innocence of a person having a coin operated device, and the right to be confronted by their accuser and the witnesses against them? Does it not violate Act 2, Section 1, of the Constitution of the State of Kansas to the effect that the legislative power of this state shall be vested in the House of Representatives and the Senate?"

The appellees contend there is no way they could comply with the laws in existence if the ordinance is allowed to stand, because if they comply with the ordinance they cannot comply with the Federal rules and regulations, and if they comply, on the other hand, with the Federal rules and regulations, they cannot comply with the proposed ordinance to procure a license.

The appellees emphasize that a gambling device has been defined as any instrument adapted and designed to play any game of

chance for money or property. ( *City of·Wichita v. Stevens,* supra.) We would emphasize that the foregoing definition includes the word *adapted.*

It would appear on the surface that the appellees have made a good case, but a closer look will disclose that pinball machines may be designed in various ways and, even though designed to pay off only in free games for those who play and register a sufficient score, can very easily be used, converted or adapted to gambling purposes.

Whether gambling takes place where pinball machines are kept depends primarily on the manner in which they are used, and not upon how they may be labeled or designed in their manufacture.

A distinction is to be noted on this point. In both the *Waite* and *Coney Island* cases the court was confronted with a particular "pinball" machine, and the question was whether it was a gambling device within the meaning of G. S. 1949, 21-1508. This statute, as worded, made it a criminal offense to keep a *gambling device, designed and devised* for the purpose of playing any game of chance for money or property. No reference to the manner in which the machine was used appeared in the statute, and upon strict construction it was not read into the statute. In the *Coney Island* case, since the *machine itself* did not fall within the prohibition of 21-915, *supra,* it was held not to be subject to seizure and destruction as a gambling device under 21-925, *supra.*

It has undoubtedly been the experience of the Federal authorities that pinball machines are easily and frequently changed from an ostensibly innocent use to *a use* which is designed primarily for gambling, and they have concluded that a pinball machine is an instrument of organized gambling and rackets.

Some of the fifty states have legalized gambling within their borders and others do not have legalized gambling. The Federal Government does not seek by the occupational tax on gambling devices to legalize gambling in all of the states, just as it has never sought to legalize the sale of liquor in all the states. The Federal Government has established no law with regard to the legality or illegality of gambling on pinball machines within the several states. Therefore, each state is free to determine whether it wishes to permit gambling or not.

While gambling violates the Kansas law, there is no Federal law against gambling, but if one operates a gambling· device without

purchasing a Federal stamp to permit gambling, the fine and imprisonment imposed by the Federal Government is severe. One is naturally led to the question, why do persons such as the appellees herein purchase the $250 Federal stamp for the operation of a coin-operated device which the Federal Government classifies as a gambling device? The answer seems obvious. The purchase of a $250 Federal stamp for the right to use a pinball machine on the premises in Kansas City, Kansas, raises a strong presumption of illegal activity.

Almost every exercise of the police power will necessarily either interfere with the enjoyment of liberty or the acquisition, possession and production of property, or involve an injury to a person, or deprive a person of property within the meaning of the Fourteenth Amendment to the Constitution of the United States. Nevertheless, it is well settled that an exercise of the police power having such an effect will be valid if it bears a real and substantial relation to the public health, safety, morals or general welfare of the public, and if it is not unreasonable or arbitrary.

Whether an exercise of the police power does bear a real and substantial relation to the public health, safety, morals or general welfare of the public, and whether it is unreasonable or arbitrary are questions which are committed in the first instance to the judgment and discretion of the legislative body, and, unless the decisions of such legislative body on those questions appear to be clearly erroneous, the courts will not invalidate them.

In determining whether an ordinance which has the effect of prohibiting pinball machines by conditions imposed upon the issuance of a license is reasonable, and whether it has a substantial relationship to the health, morals, safety or general welfare of the people of a municipality, the court may weigh the benefit to those people affected by the elimination of such devices against the benefits in having such devices available for use by those people, and the interests of the appellees as the owners of those devices.

It is true these machines may be operated by members of the public without any gambling, but there will obviously be very little benefit from such operation to anyone other than the owner by reason of payments received for their use. Certainly, a legislative body could reasonably conclude that the amusement provided to operators of such machines, which is all they would get from their operation unless they were used as gambling devices, would contribute little, if anything at all, to the health, safety,

morals or welfare of such operators or of the people of Kansas City.

On the other hand, the potentialities for injury and harm to health, morals, safety and welfare of the public from these machines may quite reasonably have been regarded as very serious by the legislative body of Kansas City. (*Benjamin v. Columbus*, 167 O. S. 103, 146 N. E. 2d 854.)

We cannot say the enactment of the ordinance in question, which prohibits the issuance of a license to one who has paid a current $250 Federal occupational tax for the use of a coin-operated amusement or gaming device, or, if issued, that it be revoked when such Federal occupational tax has been paid, is unreasonable or arbitrary.

The appellees next attack the ordinance on the ground that it is unreasonable to require the approval of the Chief of Police and the Electrical Inspector before a coin-operated amusement device license can be issued to an applicant.

Assuming the applicant fulfills the other conditions, it is argued these officers under section 3(c) have arbitrary power to deny the issuance of a license, and this makes the ordinance bad as an unlawful delegation of legislative power, citing *Smith v. Hosford*, 106 Kan. 363, 187 Pac. 685; *Julian v. Oil Co.*, 112 Kan. 671, 212 Pac. 884; *Cities Service Co. v. Koeneke*, 137 Kan. 7, 20 P. 2d 460; and *Hudson Properties, Inc. v. City of Westwood*, 181 Kan. 320, 310 P. 2d 936.

A reasonable construction of the ordinance requires that we look at the whole of section 3 in the ordinance, and not merely to the last subparagraph thereof. The section is entitled "Inspection." Subparagraph (a) sets forth the purpose for which the Chief of Police shall investigate the applicant; and subparagraph (b) sets forth the purpose for which the Electrical Inspector shall inspect the premises where the electrical device is to be located.

Reasonably construed, the ordinance limits the functions of these officers to the duties specifically stated, and if the applicant and his premises meet the standards required by the ordinance, these officers are obligated to approve the application. This section merely provides for the delegation of administrative duties which are designed to assist the license department of the city in the administration of the ordinance.

In conclusion we hold the ordinance in question to be valid and constitutional. It is within the legislative power of the city to enact such ordinance. (*City of Wichita v. Stevens*, supra.)

The judgment of the lower court is reversed.