No. 43,980

M. W. WATSON, INC., *Appellee*, v. THE CITY OF TOPEKA, A MUNICIPAL CORPORATION, *Appellant*.

(400 P. 2d 689)

Opinion filed April 10, 1965.

*L. M. Cornish, Jr.*, of Topeka, argued the cause, and *George D. Wagstaff*, City Attorney, *Ralph F. Glenn, J. W. Leuenberger, M. D. Bartlow* and *Roger R. Viets*, all of Topeka, were with him on the briefs for the appellant.

*Herbert A. Marshall*, of Topeka, argued the cause, and *Allen Meyers, Doral H. Hawks, Wayne E. Hundley* and *E. Gene McKinney*, all of Topeka, were with him on the briefs for the appellee.

*John Decker*, City Attorney of Wichita, and *Phillip Mellor*, Assistant City Attorney of Wichita, and *Arthur N. Turner*, City Attorney of Newton, filed a brief *amicus curiae*.

*Robert L. Webb, Ralph W. Oman, Phillip E. Buzick, William B. McElhenny, James D. Waugh, James L. Grimes, Jr., Donald J. Horttor* and *Terry L. Bullock*, all of Topeka, attorneys for Kansas Builders' Chapter, The Associated General Contractors of America, Inc., filed a brief *amicus curiae*.

*Dale M. Bryant, Morris H. Cundiff, Garner E. Shriver* and *Glenn J. Shanahan*, all of Wichita, attorneys for Wichita Division of Kansas Builders Chapter, the Associated General Contractors of America, Inc., filed a brief *amicus curiae*.

The opinion of the court was delivered by

FONTRON, J.: This appeal is brought by the defendant, the City of Topeka, from a judgment of the district court of Shawnee County, Kansas, holding subsection (f) of ordinance 11040 to be unreasonable and, therefore, unconstitutional and void, enjoining its enforcement by the city and ordering the return to plaintiff of all sums paid by him to the clerk of the district court. Throughout this opinion, the appellant will be designated as defendant, or city, and the appellee, as plaintiff, or Watson.

The facts giving rise to this controversy are briefly, as follows: In January 1963, Watson entered into a contract with Shawnee County to erect a courthouse. A building permit was obtained from the city and construction was commenced late in the month. At that time, no fees were charged for the use and occupancy, during construction, of those parts of the city streets and sidewalks specifically covered by section 4402 of the city building code, which reads as follows:

"Sec. 4402. Material or equipment necessary for the work under a building permit may be placed or stored on public property in the following locations:

"(a) In Front of the Building Site. In the one-third portion of the roadway of the street that is adjacent to the curb in front of the building site for which a permit has been issued; provided that no material or equipment shall be placed or stored within five feet (5') of any rail or any street railway track.

"(b) In Front of the Adjoining Site. In the roadway of the street adjoining the building site for which a permit has been issued to the same extent and under the same restrictions as specified in Subsection (a).

"A due waiver of claim against the city for damages on account of such placement or storage must be obtained from the owner of such property and filed in the office of the Building Official before such materials or equipment may be placed or stored.

"(c) In the Alley. In the alley adjoining the building site for which a permit has been issued, provided that a clear and unobstructed roadway not less than Ten feet (10') in width is maintained through such alley along the building site.

"(d) Public Sidewalk in Front of Building Site. On any portion of the public sidewalk in front of the building site for which a permit has been issued, except on the walkway required to be maintained."

In July 1963, some six months after work on the courthouse was started, the city enacted ordinance 11040, the material parts of which read:

"(f) *Fees for Temporary Use of Public Property.* Any applicant for a building permit who requests encroachment upon public streets, sidewalks or

other public property to be used during construction as an area for storage of materials of construction, and/or machinery, or for the erection of fencing, barricades, sidewalks, passageways or construction offices, such area being used in such a manner as to deny the public the use of such street, alley or public property, shall pay to the Building Inspector a fee of one-quarter cent (¼) per square foot per day, with a minimum fee of Five Dollars ($5.00).

"Payment for space shall be made in advance at the daily rate established herein, and, at the discretion of the Building Inspector, a permit for such storage or encroachment may be issued for a monthly or longer basis."

In compliance with this ordinance and in response to the city's requirement, the plaintiff paid the sum of $223.20, under protest, for the temporary use of 2,880 square feet of the abutting streets for a thirty-day period, and commenced this action to enjoin enforcement of the ordinance. By agreement of the parties, the court ordered fees under the ordinance to be paid into the office of the clerk of the district court pending the outcome of the trial.

After a trial on the merits in which evidence was presented by both parties, the trial court found the charge imposed by ordinance 11040 (f) was unreasonable as being "all out of proportion" to the cost of inspection and regulation and held the ordinance to be "unreasonable and invalid" and "therefore unconstitutional and void." In appealing from this decision, the city raises two principal points: First, that Watson has no legal capacity to maintain this action, and second, that ordinance 11040 (f) is not unreasonable, unconstitutional or void, but is a proper exercise of police power. We shall consider these in order.

Although a private person may not, in general, maintain an action to vindicate or enforce a mere public right in which his interest is no different than those of the public in general (*Dunn v. Morton County Comm'rs*, 162 Kan. 449, 177 P. 2d 207), the rule is subject to a well recognized exception. Where an individual suffers damage different in character from that sustained by the public at large, he is held to be entitled to maintain an action to restrain illegal acts by public officials. (28 Am. Jur., Injunctions, § 178, p. 680.)

This exception has been recognized in Kansas. In *Peoples Taxicab Co. v. City of Wichita*, 140 Kan. 129, 34 P. 2d 545, it was held that the plaintiff cab company had a right to question the validity of a city ordinance which required taxicabs to be licensed, set the license fees to be charged, and required insurance to be carried. To like effect is *Home Cab Co. v. City of Wichita*, 140 Kan. 451, 36 P. 2d 1012.

In *Butler v. Rude,* 162 Kan. 588, 178 P. 2d 261, this court ruled than an insurance company and a licensed embalmer, proposing to act as the company's agent, were proper plaintiffs in an action to enjoin the State Embalming Board from enforcing its rule prohibiting sale of burial policies by embalmers. See also *Tripp v. Board of County Commissioners,* 188 Kan. 438, 362 P. 2d 612 and *Reeder v. Board of County Commissioners,* 193 Kan. 182, 392 P. 2d 888.

We believe that Watson is a proper plaintiff in this lawsuit. Even though plaintiff will be accorded no different treatment under the ordinance than other building contractors similarly situated, there can be no denial that the ordinance will adversely affect Watson's interests. Nor can it be gainsaid that Watson and other contractors in the same category will suffer damage of a nature not sustained by the public in general.

Although the city cites numerous authorities as supporting the ordinance, none are factually in point. Each case involves a situation where the plaintiff's interest was obviously no different in kind or character than that of any other member of the general public. The case of *Haines v. Rural High School Dist. No. 3,* 171 Kan. 271, 232 P. 2d 437, is representative. That action was one to enjoin the illegal expenditure of funds voted for one purpose but diverted to another. Relief was denied on the ground that plaintiff had suffered no special damage. Syllabus 2 of the opinion reads:

"In order for an individual to maintain an action of the character above mentioned he must plead and prove that he has sustained special damage different in kind from that of the public generally."

In our opinion, there is no merit in the defendant's contention that Watson lacks the capacity to maintain this action.

We turn now to the second point raised by the city in this appeal: Is subsection (f) of ordinance 11040 a valid and constitutional exercise of the police power? The city, in maintaining an affirmative position, seeks to justify the ordinance on the ground that its purposes are to regulate the use of the city streets, sidewalks and alleys, and to control and manage traffic thereon.

From an early date this court has recognized a landowner's right temporarily to deposit, in abutting streets, building materials required to improve his property, even though the public may to some extent be inconvenienced. (*Kansas City v. McDonald,* 60 Kan. 481, 57 Pac. 123; *Longnecker v. Railroad Co.,* 80 Kan. 413, 420, 102 Pac. 492; *Tepfer v. City of Wichita,* 90 Kan. 718, 721, 136

Pac. 317.) Without abandoning this position, we nonetheless believe that it must be conceded today that cities may, in the proper exercise of their police powers, regulate the extent to which public streets, alleys and sidewalks may be used for storage purposes by adjacent property owners and builders. The right of reasonable regulation may plausibly be assumed from the language of G. S. 1949, 12-1630 (now K. S. A. 12-1630), which provides:

"That nothing in this act shall prevent any person, who may be improving his property, from encumbering the streets, avenues or alleys, *under a permit from the proper officers of the city*, but in the event of such encumbering of the streets with building material or earth, necessary for the improvement being made, the contractor shall clean up said premises thoroughly within ten days from the completion of the work." (Emphasis supplied.)

Acting in the exercise of its police power, the city of Topeka enacted section 4402 of the building code which limits the placing and storage of material and equipment to the one-third of the street which is nearest the curb in front of, and adjoining, the building site, and to adjacent alleys and sidewalks, provided space is left for passage. These limitations appear to be a reasonable exercise of the city's responsibility to further the safety and general welfare of its citizens. In *Jones v. Garrett*, 192 Kan. 109, 386 P. 2d 194, we said:

"It has been held a valid exercise of the police power of this state to regulate, limit and control the use of its highways in order to promote the safety and general welfare of the people, and this power extends to use by nonresidents as well as residents. (*Riddle v. State Highway Commission*, 184 Kan. 603, 339 P. 2d 301; *Smith v. State Highway Commission*, 185 Kan. 445, 346 P. 2d 259.)" (p. 116.)

But the city, through a later ordinance, 11040 (f), seeks to extend the scope of its regulatory power by exacting payment of $0.0025 per day per square foot of space occupied, and now contends that the ordinance is a "valid exercise" of its police power and is a "regulatory and not a revenue raising measure." Watson disputes this contention and asserts that the measure is not a reasonable regulation of the use of city streets, but a revenue measure masquerading in the guise of police power. These opposing viewpoints define the crux of this lawsuit.

Before the ordinance may be sustained as a legitimate and valid exercise of the police power, it must bear a rational relationship to the rightful regulation of the use and management of the city streets. In *State v. Consumers Warehouse Market*, 183 Kan. 502, 329 P. 2d

638, we discussed the constitutional requirements of legislation enacted under the police power and, after holding that the purpose of the legislation there being considered fell within the police power of the state, we said:

"Notwithstanding the conclusion just announced, there still remains for determination whether the means chosen by the legislature are reasonably designed to accomplish the purpose of the Act, *i. e.,* are its terms arbitrary, discriminatory, or demonstrably irrelevant to the legislative policy? This is the test of due process in the exercise of police power announced in *Nebbia v. New York,* [291 U. S. 502, 78 L. Ed. 940, 54 S. Ct. 505] . . ." (p. 508.)

The thrust of the plaintiff's argument, specifically stated, is this: That the fees set by section (f) of ordinance 11040 are not reasonably related to the costs of inspection necessitated by, or the other expenses eventuating from, the temporary occupancy of those parts of city streets, sidewalks and alleys permitted by section 4402 of the building code. If the plaintiff's argument be factually sound, and the trial court found the facts in Watson's favor, then, under familiar precedents, ordinance 11040 (f) is not a valid exercise of the city's police power but a measure for the raising of revenue.

In *State, ex rel., v. Cumiskey,* 97 Kan. 343, 155 Pac. 47, this court considered the validity of a law requiring inspection of petroleum products and prescribing a schedule of inspection fees, one-half of which were retained by the inspectors as compensation for their services, and the balance paid to the state treasurer. It was there held that the fees grossly exceeded the amounts reasonably required to effectuate the lawful purposes of the act and that the section of the act, which fixed the fees, was void.

The rule announced in Cumiskey was recognized in *State, ex rel., v. Ross,* 101 Kan. 377, 166 Pac. 505, although in this case it was held that the fees required of exhibitors to defray the cost of inspecting motion picture films were not so disproportionate to the expenses involved as to constitute the act a revenue measure.

A more recent case is *City of Beloit v. Lamborn,* 182 Kan. 288, 321 P. 2d 177, where a city ordinance required a distributor of fluid milk to obtain a permit and to pay a fee. The defendant contended that the fee required was unreasonable and oppressive. In sustaining the validity of the ordinance, we held:

"The disproportion between the amount of fees collected under an ordinance of a city of the second class purporting to be an inspection measure and the expenses incurred in its execution will justify a court in holding the ordinance to be invalid only when one of two conditions is met: either the discrepancy must be so great that the court is forced to the conclusion that the

city in the first instance acted in bad faith and intended to provide a revenue under the pretext of requiring an inspection, or else the city must have neglected an opportunity to revise the charges exacted after experience had shown those previously imposed to be excessive." (Syl. ¶ 5.)

Our latest decision on the subject is *Panhandle Eastern Pipe Line Co. v. Fadely*, 183 Kan. 803, 332 P. 2d 568. In this case an act of the legislature directed the state corporation commission to assess against the parties involved in any hearing the costs incurred therein and also all costs incurred in investigations, etc. The act further provided that twenty precent (20%) of collections be credited to the state general fund and eighty percent (80%) be used in administering the act. In declaring the act invalid, we held:

"Under its police power, the state may reimburse itself for the cost of regulating and supervising a business or commodity by assessing the necessary expenses to such business or commodity which created the necessity for such regulation and supervision.

"Where a statute which purports to assess expenses of regulation and supervision shows on its face that some part of the exaction is to be used for other purposes, the police power is exceeded and the statute is void." (Syl. ¶¶ 1, 2.)

The principle threading through the above cases is applicable here. It must, then, be determined whether the fees fixed by the ordinance are reasonably related to the expenses they were intended to pay. This presents a factual question. As we have previously mentioned, the trial court found the charges to be out of all proportion to the costs involved, and this finding must control if it be supported by substantial competent evidence.

There is evidence in the record that if plaintiff were to use the entire area permitted by section 4402 of the building code for the year and one-half estimated to complete the courthouse, the cost would approximate $52,000.00; that this sum lacks but $9,000.00 of paying the total yearly salaries of the building inspector and his assistants; that the fees which Watson would have paid under the ordinance would nearly equal the department's entire income from building permits for 1961; that on-site inspections are made once a week; that only *building* contractors are required to pay fees for use of the street; that the fees go into the city general fund, where they are not allocated to pay expenses of the city building inspector but are used to pay general city expenses; and that the city traffic engineer would not need additional money because of the use of part of a street. In view of the foregoing evidence, we

are obliged to hold that the findings of the trial court are sufficiently sustained by the evidence.

The city stresses our decision in *City of Hutchinson v. Harrison,* 173 Kan. 18, 244 P. 2d 222, as supporting its position. We believe, however, that the facts clearly distinguish that case from the present one. The parking meter ordinance, which the Harrison case upheld, provided that proceeds from the meters should go into a separate parking meter fund for use in regulating and controlling traffic, acquiring off-street parking facilities, and purchasing, regulating and maintaining parking meters. The costs and expenses involved in effectuating all such purposes were held to bear a rational relationship to the revenues obtained from the meters. We recognized the rule stated in *State, ex rel., v. Cumiskey,* supra, and in other cases herein cited, when in the Harrison case we said:

". . . that the great weight of authority in this country sustains the validity of parking meter ordinances when such ordinances are enacted in the exercise of police powers conferred by statute *if they are neither palpable nor on their face revenue measures or arbitrary, oppressive, unreasonable, and discriminatory."* (p. 22.) (Emphasis supplied.)

No further comment on Harrison is necessary except to say that the revenues there were found not so clearly in excess of sums properly expendable for purposes related to traffic control and to acquiring and operating parking facilities as to characterize the ordinance a revenue measure. The same cannot be said of ordinance 11040 (f) in view of the trial court's finding based on evidence which we deem both substantial and competent.

In our judgment, the evidence shows subsection (f) of ordinance 11040 to be designed primarily for the production of revenue. No reasonable relationship is perceived between the fees exacted and the defrayal of inspection and other expenses incidental to the use of those parts of the streets, alleys and sidewalks permitted by section 4402 of the building code. The ordinance thus exceeds the legitimate police powers of the defendant city. As a revenue raising measure subsection (f), ordinance 11040, violates Article 11, Section 1, of the Kansas Constitution, declaring that the legislature shall provide for a uniform and equal rate of assessment and taxation. (*State, ex rel., v. Cumiskey,* supra; *Panhandle Eastern Pipe Line Co. v. Fadely,* supra.)

We must conclude that subsection (f) of ordinance 11040 is unconstitutional and void. The judgment of the court below is affirmed.