No. 45,282

DELIGHT WHOLESALE CO., a Corporation, and ROBERT C. FULLER, JR., a Minor, by R. C. FULLER, His Father and Next Friend, *Appellants*, v. THE CITY OF OVERLAND PARK, KANSAS, a First Class City, *Appellee*.

(453 P. 2d 82)

Opinion filed April 12, 1969.

*John W. Breyfogle, Jr.*, of Olathe, argued the cause, and *Joseph S. Davis, Jr.*, of Olathe, was with him on the brief for the appellants.

*Donald C. Amrein,* of Mission, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment denying relief in an action to enjoin the enforcement of an ordinance prohibiting huckstering and peddling on the public streets of Overland Park, Kansas.

On July 19, 1965, the governing body of the city of Overland Park, a city of the first class, passed an ordinance to become effective January 1, 1966. Section 1 of the ordinance reads:

"It shall hereafter be unlawful for any person, persons, association of persons, firms, or corporation to conduct, hold, carry on, operate a business or engage in the business of huckstering, peddling or similar enterprise, or selling anything of any nature, upon or in any right-of-way of any public street, alley, avenue, boulevard or side-walk-way within the limits of the City of Overland Park, Kansas."

The penalty for violation of the ordinance was a fine of $100 or imprisonment not to exceed 30 days or both such fine and imprisonment.

Some years prior to the enactment of the ordinance the plaintiff, Delight Wholesale Company, had granted franchises of territory within the city of Overland Park to dealers who sold frozen novelties purchased from it, from jeeps furnished by it, on the streets of Overland Park. The jeeps were leased by the dealers. During 1965, the plaintiff, Robert Fuller, Jr., was such a dealer.

Plaintiffs' petition for injunction restraining the enforcement of the ordinance alleged that the said ordinance was invalid for numerous reasons that will be presented later.

The answer was a general denial.

The ordinance prohibits all huckstering and peddling on the streets of Overland Park. This would prohibit farmers from selling watermelons, tomatoes and other fresh vegetables from their vehicles. Such sales are about the only opportunity we have to know the difference between a red, juicy watermelon and a sun-kissed tomato all ripened on the vine from those picked green and ripened in the dark recesses of a warehouse. It would also prohibit the old fruit peddler who perhaps is only a nostalgic memory of the past—"Yes, we have no bananas."

However, we are not to concern ourselves with problems other than those of the plaintiffs. We adhere to the rule that the con-

stitutionality of governmental action can only be challenged by a person directly affected and such challenge cannot be made by invoking rights of others. ( *Stone v. City of Wichita,* 145 Kan. 377, 65 P. 2d 595; *Marks v. Frantz,* 179 Kan. 638, 298 P. 2d 316; *State, ex rel., v. Fleming Co.,* 184 Kan. 674, 339 P. 2d 12; 16 C. J. S., Constitutional Law, § 76, page 236.)

From the record it is disclosed that the city's witnesses conceded that the drivers of the vehicles from which frozen goodies were sold were not careless or reckless. They were considered to be good drivers. Neither is a sanitation nor health problem presented.

Mr. Bennett, president of the city council, testified that there were two conditions creating the problem they were trying to correct— the safety of the younger citizens in the area and the nuisance value. We quote from his testimony:

"Q. These reasons [nuisances], along with safety, were the reasons, in your knowledge, this ordinance was passed?

"A. I think the primary reason the ordinance was passed was for the safety reason. *If it was for nuisance value alone, I would not have voted for the ordinance.*

"Q. On the safety value, then, the reasons—I guess you have already mentioned why the ordinance was passed—mainly, I believe, that you referred to were that the children were crossing the street, running or walking or congregating at this vehicle?

"A. Yes. We were concerned with the safety of these children." (Emphasis supplied.)

Two housewives testified in support of the ordinance. Their testimony was summed up by the trial court—

"The dealers driving the jeeps would ring a bell which could be heard for a distance of one to four blocks. The bell disturbed the peace and quiet of the neighborhood and attracted the children who ran into the street from all directions and congregated around the jeep. This disturbed the parents. Some children ages two years to 8 years would run across the street. . . ."

It might be said that the manner of operating ice cream wagons, carts, etc., and the response of children thereto are matters of common knowledge, and testimony will vary greatly as to the benefits and detriments to be derived therefrom.

The trial court concluded from what is quoted above—"All this created a disturbance and constituted a public nuisance."

We are inclined to agree with the president of the City Council that the nuisance feature alone would not justify the ordinance.

We would not attempt to give a precise definition of the word "nuisance". It is generally considered to be something that inter-

feres with the rights of others. (*Hofstetter v. Myers, Inc.,* 170 Kan. 564, 228 P. 2d 522.) A public nuisance is one which annoys an entire community. (*State v. Coler,* 75 Kan. 424, 89 Pac. 693.) In *Wilburn v. Boeing Airplane Co.,* 188 Kan. 722, 366 P. 2d 246, we held:

"Although perhaps incapable of precise definition, the word 'nuisance' is generally held to mean something which interferes with the rights of persons, whether in person, property, or enjoyment of property or comfort, and to mean an annoyance, that which annoys or causes trouble or vexation, that which is offensive or noxious, or something that works harm, inconvenience or damage. What may or may not constitute a nuisance in a particular case depends upon many things, and each case must of necessity depend upon its own particular facts and circumstances." (Syl. 6.)

A dyspeptic or a recluse might find some things offensive which would not be at all obnoxious to the general public. It is difficult for us to consider the operation of an ice cream vehicle as genuinely offensive or obnoxious.

The question of public safety presents a more difficult problem. The trial court also found that the safety of the children was endangered when they were attracted to the streets and that the ordinance was a proper exercise of the police power.

The appellant argues on appeal that the city lacked the power and authority to enact the ordinance; the ordinance as enacted is not a proper and valid exercise of police power and is unreasonable and arbitrary; the ordinance violates the 14th Amendment to the Constitution of the United States and Section 1 of the Bill of Rights of the Constitution of the State of Kansas, and the adoption of a regulatory ordinance would satisfy the legitimate object.

All of the above contentions may be disposed of by the answer to a single question—is the prohibition of the legitimate business reasonably necessary for the welfare and safety of the children of Overland Park? If the answer is yes the ordinance is valid. If the answer is no the ordinance is void for each and all of the reasons listed by appellants.

It is conceded by appellant that since the adoption of the Home Rule Amendment (Art. 12, Sec. 5, Kansas Constitution) the cities have broad powers of self determination. It has always been the policy of this state to confer on cities the power to pass ordinances to protect the safety, health and general welfare of its citizens.

In *Ash v. Gibson,* 145 Kan. 825, 67 P. 2d 1101, we stated at page 833:

". . . At any rate, since the founding of our state the legislative policy has been to confer on the cities the right of self-government in such large measure that it amounts to the possession of police power where the safety, health and general welfare of its people are concerned. This power is conferred by means of the various statutes dealing with that subject which have been heretofore quoted in this opinion. (See *Service Oil Co. v. City of Marysville*, 117 Kan. 514, 231 Pac. 1031.)

"*The only limitation on it is that it must be exercised in a reasonable manner.* (See *Standard Oil Co. v. Marysville*, 279 U. S. 582, 73 L. Ed. 856.) There are two views to take of this question. One is the traditional view that this right is a precious thing inherent in the rights of man generally. We have seen that this view has been entertained generally by the people of our race for many years. The other view is that it is a practical necessity in order to make our form of government work at all, extending as it does over a wide expanse of territory and touching widely different situations and communities. . . ." (Emphasis supplied.)

However, while the police power is wide in its scope and gives a governmental body broad power to enact laws to promote the health, morals, security and welfare of the people, and further, a large discretion is vested in it to determine for itself what is deleterious to health, morals or is inimical to public welfare, it cannot under the guise of the police power enact unreasonable and oppressive legislation or that which is in violation of the fundamental law. (*Little v. Smith*, 124 Kan. 237, 257 Pac. 959; *Gilbert v. Mathews*, 186 Kan. 672, 677, 352 P. 2d 58.)

Huckstering and peddling of vegetables, fruits and ice cream products have long been recognized as legitimate businesses. However, the right to so sell is not absolute and may be regulated or withheld, if necessary, for public safety and welfare.

The acknowledged purpose of the ordinance is to protect the safety of children who gather about the vehicle in the street. What are the facts? The jeeps from which the ice cream products are sold travel from four to seven miles per hour. They in themselves are not dangerous instrumentalities. The danger, if any, is from other traffic after the children go upon the street. It is quite impossible to keep children out of the street in a residential district. If they do not actually play in the street, they will play in the yard where their toys roll into and across the street. Under such circumstances they are not as readily observed as children following a jeep with a bell that can be heard two or three blocks away.

If children in the streets of residential districts are to be protected, the regulation must be applied to all those using vehicles on the street.

The city has ample power to regulate hucksters and peddlers without prohibition. Although not intended to be exhaustive, they may be prohibited from selling on the freeways, thoroughfares and busy streets; they may be kept away from schools and hospitals, and they may be reasonably regulated as to the hours during which they sell.

The appellant calls our attention to certain cases from foreign jurisdictions, particularly *Trio Distributor Corp. v. City of Albany,* 2 N. Y. 2d 690, 143 N. E. 2d 329, where the court was dealing with an ordinance requiring vendors in the streets to be accompanied by attendants having the sole duty of protecting children from hazards of vehicle traffic. In the opinion the court stated:

"Although reasonable regulation of itinerant peddling in the streets of municipalities is permitted, 'When regulation becomes destruction, it ceases to be regulation.' . . . A peddler's ordinance cannot be used by indirection to prevent the conduct of a lawful business. . . . An ordinance will be invalidated purporting to regulate a lawful activity, where its purpose is 'to prohibit by onerous and exasperating restrictions under the guise of regulation.' . . ." ( Citations omitted.)

However, our separate research has disclosed a decision from the Supreme Court of Illinois (*Good Humor Corp. v. Mundelein,* 33 Ill. 2d 252, 211 N. E. 2d 269, 14 A. L. R. 3d 887.) where the court in a well reasoned opinion held an ordinance similar to the one before us valid.

We must apply the general rules to the facts and circumstances as they exist in this state and as they exist in the streets of our residential areas. The facts as they exist in a more heavily populated state might well justify a different conclusion than would be reached here.

In *McCulley v. City of Wichita,* 151 Kan. 214, 98 P. 2d 192, this court approved the rule that the reasonableness of an ordinance involves a determination as to whether it is for the public benefit of the community in general, and whether the means adopted to produce the public benefit are reasonably necessary to accomplish that purpose and not unduly oppressive upon individuals. We stated at page 225 of the opinion:

"It is well to remember the validity of such legislation must be determined by an application of the enactment to the particular facts and circumstances involved and that the reasonableness of the enactment is a question for courts

to determine in the exercise of sound judcial discretion. No arbitrary rule, therefore, can with justice be made applicable to every circumstance. The concern of courts must be and is with the preservation and evolvement of principles which constitute helpful guides to the process of administering justice. . . ."

We are forced to conclude that the businesses of huckstering and peddling may be controlled by reasonable regulations, and the absolute prohibition of such legitimate enterprises is arbitrary and unreasonable. The ordinance is therefore void.

The judgment is reversed and remanded to the trial court with instructions to enjoin the enforcement of the ordinance.

APPROVED BY THE COURT.

FROMME, J., dissenting: The nostalgia this court feels when it remembers the haunting peal of the ice cream vendor's bell should not influence a decision in this case. The ordinance which the majority strikes down appears to be a proper exercise of the police power. It was passed to prevent the use of city streets to conduct, hold and carry on sales of merchandise. The ordinance applies generally to all items of merchandise sold in the street.

The majority state, "the right to sell is not absolute and may be regulated or withheld, if necessary, for public safety and welfare". Therefore, the basic difference which I hold with the majority concerns the reasonableness of the regulation. Whether an ordinance bears a real and substantial relation to the public safety and welfare should be left in the first instance to the judgment and discretion of the municipality. If there is a real and substantial relation to the public safety and welfare a court should not substitute its judgment for that of the municipality. To declare an ordinance unconstitutional a court should be able to clearly demonstrate wherein the action of the city was unreasonable and arbitrary or should point out the illegality of the ordinance. (*Grigsby v. Mitchum*, 191 Kan. 293, 302, 380 P. 2d 363.) This is not done in the present case.

The plaintiffs are using the streets to conduct, hold and carry on sales of merchandise. At least two other firms are conducting similar operations in the streets of Overland Park. The ordinance applies generally to all persons and firms alike. The ordinance does not prohibit the plaintiffs from using the streets to transport and

deliver their products within the city. It does not purport to prohibit sales made in driveways, vacant lots or other privately owned locations.

The hazard which the ordinance recognizes and seeks to remove is the stopping and parking of sales vehicles in the street while plaintiffs complete sales to customers standing in the street or right-of-way. When the purchasers appear the vendor stops his vehicle in the street. Pedestrians approach and congregate in the street. Until all sales are completed and the merchandise is delivered other traffic is affected accordingly. The age of the customers contributes to the activity around the parked vehicle and increases the hazard.

The cases upon which the plaintiffs rely to support their position stand for the proposition that the public streets exist to facilitate transportation and that activities essential to that end must be permitted. That proposition does not aid the plaintiffs. The present ordinance prohibits the use of the streets for sales. It does not interfere with any essential incident of transportation and travel.

Control and regulation of the use of public streets are vested in the municipality. This principle is so basic the cases are colleced in 4 Hatcher's Kansas Digest, Municipal Corporations §§ 144, 145.

Cities have been granted specific statutory authority to regulate the standing and parking of vehicles on city streets. (K. S. A. 8-508 (1).) In addition cities in Kansas have been empowered to determine their local affairs by the Home Rule Amendment. (Constitution of the State of Kansas, Art. 12 § 5.) It cannot be said the city acted illegally in passing this ordinance.

A majority of courts from other states have held a municipality has no power to authorize or license the use of its streets or sidewalks for the sale of articles. (See Peddling on Streets, 14 A. L. R. 3d Anno. p. 896 § 11 at p. 918.) This court has held a city may not lease the streets for the purpose of storing building materials and raising revenue from such a lease. (See *Watson v. City of Topeka*, 194 Kan. 585, 400 P. 2d 689.)

If a municipality has no power to authorize or license the use of its streets for the sale of articles it logically follows a city should have the power to prohibit the use of its streets for such unauthorized purpose.

In answer to the constitutional arguments advanced by the plaintiffs I recommend reading *Good Humor Corp. v. Mundelein*,

33 Ill. 2d 252, 211 N. E. 2d 269, 14 A. L. R. 3d 887. In a well reasoned opinion Mr. Justice Schaefer of the Illinois Supreme Court examines and disposes of each of these constitutional arguments. The Illinois court upheld an almost identical ordinance prohibiting sales of merchandise in the street.

The majority of our court distinguishes the *Good Humor Corp.* case on the ground Illinois is a more heavily populated state. I hardly feel this is a sound distinction in view of the fact the present ordinance applies only to the city of Overland Park which is a heavily populated urban area.

I would affirm the lower court and uphold the ordinance.

KAUL, J., joins in the foregoing dissent.

FONTRON, J., concurring: In agreeing with what has been said and held in the majority opinion, I should like to make two brief comments:

First. The ordinance prohibits peddling and huckstering not only on the rights of way of streets, avenues and boulevards, but on side-walk-ways as well. Manifestly the sale of merchandise on the latter, whether it be ice cream bars, bubble gum, pink lemonade, kool-aid, or what have you, bear little or no relationship to children running or congregating in the streets, or to public safety in general, or to regulation of street traffic. For this reason, as well as those given in the opinion, I deem the ordinance clearly an unreasonable exercise of police power.

Second. I believe the recent case of *Watson v. City of Topeka,* 194 Kan. 585, 400 P. 2d 689, cited in support of the dissenting opinion, is not in point. The Watson case holds that the common law right of a landowner to deposit needed building materials temporarily in an abutting street is subject to *reasonable* regulation, but that a street may not be leased by a city for revenue raising purposes.