No. 38,046

A. A. HOFSTETTER and DOSSIE HOFSTETTER, his wife; HARVEY HOFSTETTER and EVELYN HOFSTETTER, his wife; ALBERT W. HAYES and ALICE L. HAYES, his wife; WESLEY BALLINGER and GEORGIE BALLINGER, his wife, and FRANK DEMO and THERESA DEMO, his wife, *Appellees,* v. GEORGE M. MYERS, INC., A Kansas Corporation, *Appellant.*

(228 P. 2d 522)

Opinion filed March 10, 1951.

*Gale Moss,* of El Dorado, argued the cause, and was on the briefs for the appellant.

*L. J. Bond* and *Robert M. Bond,* both of El Dorado, argued the cause, and were on the briefs for the appellees.

The opinion of the court was delivered by

PRICE, J.: This is an appeal from a judgment of the lower court granting a permanent injunction enjoining the defendant from operating a portable hot asphalt mixing plant under certain conditions, hereinafter set forth.

Plaintiffs are homeowners and have resided for a number of years in a residential area a little northeast of the city of El Dorado. In June, 1948, the defendant set up and put into operation a portable asphalt mixing plant on property owned by the Missouri

Pacific Railroad Company, which it had leased for such purpose. The plant is located from seven hundred feet to a quarter of a mile southwest of the residences of plaintiffs, and its product is used in making street and highway repairs. This action to enjoin was brought on the theory that the plant's operation constituted a nuisance on account of the dust and obnoxious odors resulting therefrom, all to the damage and injury to plaintiffs and their properties.

The testimony of plaintiffs and other witnesses was to the effect that when the wind was in the right direction (from the southwest) a great amount of dust was blown over onto and settled on plaintiffs' properties, finding its way into their homes, settling on clothing, furniture and food, and in general making life miserable for all concerned. Before rendering judgment the trial judge made a personal inspection of the properties so as to familiarize himself with the over-all picture.

Rather extensive findings of fact were made by the lower court, and they are as follows:

"1. That the defendant, Geo. M. Myers, Inc., is the owner and operator of a certain Barber-Greene Hot Asphalt paving plant, which will be hereinafter referred to as the 'plant'.

"2. That said plant was used and operated by defendant at a location leased by defendant for said purpose in the west end of the Missouri Pacific Railroad Company's switching yards northeast of El Dorado, Kansas, outside the city limits of said city during certain days in the years 1948 and 1949.

"3. That said plant was so located by virtue of a written lease agreement made and entered into by and between defendant and the Missouri Pacific Railroad Company, which lease specifically provides for the operation of the plant in the switching yards of said railroad Company.

"4. That in 1948 said plant was in operation for 20 days beginning October 7, 1948, and ending November 2, 1948. That the time during which said plant was in operation during said 20 days varied from 2½ hours on October 12, 1948, to 12 hours on October 9, 1948.

"5. That in 1949 said plant was in operation for 29 days beginning June 23, 1949, and ending August 20, 1949. That the time during which said plant was in operation during said 29 days varied from 3 hours on June 27th and 30th, 1949 to 12 hours on July 22nd and on August 20, 1949.

"6. That the plaintiffs, and all of them, are residents of the general area to the Northeast of the location of said plant; that the home of plaintiff closest to the location of said plant is approximately 700 feet therefrom and the home of plaintiffs farthest from the location of said plant is approximately ¼ mile therefrom.

"7. That a dirt and gravel road runs past said plant and the homes of all plaintiffs; that it connects the city streets of El Dorado with Kansas Highway 13 northeast of El Dorado, Kansas.

"8. That the City dump of the city of ·El Dorado is south of the homes of plaintiffs and on the south side of the switching yards of the Missouri Pacific Railroad Company.

"9. That the switching yards of said Railroad Company are used by it for the switching of freight cars, the switching of switch engines, coal burners, and for industrial purposes by lease agreement between the railroad Company and the users.

"10. That the plant of defendant is used in making hot asphalt paving material for street and highway construction.

"11. That the paving material produced by said plant is made by the processing of aggregate material, chat, therein by heating, to remove all moisture, in two revolving heating drums, each 12 feet long, by the application of liquid asphalt heated to provide liquification to permit it to be sprayed into the dried aggregate; the mixing thereof within a pug mill and then taken by endless belt conveyor to trucks for application as the finished product. That each revolving heating drum is equipped with a metal stack to carry off the steam resulting from drying of the aggregate and such dust as may escape the revolving heating drums. That each of said stacks is equipped with a dust collector, standard equipment of the plant.

"12. That no asphaltic spray from said plant escapes into free air.

"13. That plaintiffs will, if the wind direction be right and the wind velocity sufficiently strong, have dust which escapes said two stacks, blown upon them and are inconvenienced thereby.

"14. That the wind must be from a direction between 190 degrees and 220 degrees, true, to carry dust from said plant to plaintiff's property.

"15. That the dust escaping from the stacks of said plant is dry; that it contains no oil, asphalt, or fats or other sticky substance.

"16. That said plant produces no noxious odors or fumes.

"17. That said plant produces or emits no soot or smoke.

"18. That the dust produced by said plant is the same as dust common to the community in which said plant is located and especially the road passing said plant and the homes of plaintiffs.

"19. That said plant is operated efficiently by the defendant and as prescribed by the manufacturer.

"20. That the main line of the Santa Fe Railroad Company runs parallel to the plaintiff's property approximately 600 to 700 feet west thereof.

"21. That the plaintiffs have some dust, smoke, noise and odors thruout each year from

(a) The dirt and gravel road serving their general area.

(b) The Missouri Pacific Railroad Company mainline and switching operations.

(c) The Santa Fe Railroad mainline operations.

(d) The City refuse dump and its burning.

"22. The product of said plant is used by the City of El Dorado.

"23. Defendant intends to and will use said plant in said location in the future when work is available therefor and weather conditions permit said operations.

"24. That defendant's uncompleted work, by contract with the City of El Dorado, Kansas, was, on July 13, 1949, $44,000.00.

"25 That the plaintiffs, with one exception, are the only residents of the general area of the location of said plant.

"26. That at the hearing on the temporary injunction herein, such temporary injunction was granted plaintiffs, subject to the filing, as provided by law, of their bond herein in the sum of $15,000.00; that said bond was not provided or filed.

"27. That the operation of said plant by defendant is not a continuous operation; is seasonal; has not been operated continuously when set up and able to operate in said location.

"28. That defendant is not and has not been guilty of negligence in the operation of said plant."

The conclusions of law rendered by the court are:

"1. That the business of operating the hot asphalt plant is a legal and necessary business.

"2. That the defendant be restrained and enjoined from operating said asphalt plant at such times and manner that the dust and dirt coming therefrom will injure, molest, or interfere with the plaintiffs in the peaceable, quiet enjoyment of their property."

The journal entry of judgment provides that the defendant be restrained and enjoined

". . . from operating his asphalt plant at such times and in such a manner that the dust and dirt coming therefrom will injure, molest or interfere with the plaintiffs in the peaceable, quiet enjoyment of their property, . . ."

Defendant filed motions to amend and to set aside conclusion of law number 2 on the ground that it is contrary to and not supported by the findings of fact, and motions for judgment *non obstante,* and for a new trial. All of these motions were overruled, whereupon this appeal was taken.

Before passing to the real question in this lawsuit we pause briefly to take note of defendant's first complaint, namely, that the court erred in overruling its demurrer and motion for judgment on the pleadings, based upon the ground the Missouri Pacific Railroad Company, owner and lessor of the property upon which the plant was located, should have been made a party to the action.

In view of our disposition of this case the question becomes immaterial, but in passing we find that nowhere is it made to appear that the railroad company was either a proper or necessary party to the action, and certainly defendant was in no way prejudiced by the fact it was not made such.

It is not contended by defendant that the findings of fact are not supported by the evidence, and so the real question before us is whether conclusion of law number 2, and the judgment ultimately rendered thereon, have any basis in or are supported by the findings.

Defendant company argues that the findings fall far short of showing injury or damage such as would constitute a nuisance and thus justify the granting of the injunction, and that the most that can be said for them is that plaintiffs were merely *inconvenienced* by the dust which occasionally was blown over on them.

On the other hand, counsel for plaintiffs, while conceding that the findings are not as "strong" as they would prefer them to be, contend that the frequency and amount of dust are merely a matter of degree, and cite *Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208, L. R. A. 1918C, 227; *Gilbert v. Construction Co.,* 110 Kan. 298, 203 Pac. 1113; *LeLand v. Turner,* 117 Kan. 294, 230 Pac. 1061; *King v. American Rock Crusher,* 119 Kan. 618, 240 Pac. 394; *McMullen v. Jennings,* 141 Kan. 420, 41 P. 2d 753; and *Asmann v. Masters,* 151 Kan. 281, 98 P. 2d 419, as bearing on the general proposition of the right to enjoin nuisances.

While the word nuisance is perhaps incapable of precise definition, yet in general it is held to be something which interferes with the rights of citizens, whether in person, property, or enjoyment of property, or comfort. It has also been held to mean an annoyance, and, in its broadest sense, that which annoys or causes trouble or vexation, that which is offensive or noxious, or anything that works hurt, inconvenience or damage. (See 66 C. J. S., Nuisances, § 1, p. 727). What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must of necessity depend upon its own particular facts and circumstances.

As a general proposition it may be said that dust which substantially interferes with the comfortable enjoyment of adjacent premises constitutes a nuisance, provided it is sufficient to cause perceptible injury to persons or property. On the other hand, a reasonable amount of dust in a manufacturing community or industrial district does not necessarily constitute a nuisance even though it may cause some annoyance, and this is particularly true where the dust caused

by the operation of a business is only occasional and the resultant injury slight. In other words, a given amount of dust in one locality well might be considered and held to be a nuisance, and not so in others, all depending upon the particular facts and circumstances. (39 Am. Jur., Nuisances, § 57, pp. 339, 340; 66 C. J. S., Nuisances, § 23, p. 777. See annotations in 3 A. L. R. 312; 11 A. L. R. 1401; and 8 A. L. R. 2d 419.)

In the case before us we must take the facts as found by the trial court, and they show that the dust escaping from the stacks on the plant contains no oil or other sticky substance; that the plant emits no noxious odors, fumes, soot or smoke; that the dust produced by the plant is the same as dust common to the community and especially the road passing the plant and the homes of plaintiffs, and that plaintiffs have some dust, smoke and odors throughout the year from the dirt and gravel road, adjacent railroad lines, and from the city refuse dump. The findings further show that the plant is operated only occasionally; that it was not negligently operated, and that the dust from these occasional operations will be blown over onto plaintiffs' properties *only* when the direction and velocity of the wind are right, that is, blowing sufficiently strong from a generally southwesterly direction, and that when such conditions prevail plaintiffs are *inconvenienced* thereby.

Now it may be that plaintiffs suffered actual injury and damage to their persons and property as a result of the plant's operation, but the fact remains the lower court did not so find! It merely found they were *inconvenienced!* While it is perhaps true that "inconvenience," depending upon its nature, extent and result, might, in some instances, be such as to constitute a nuisance in the eyes of the law, yet under all of the facts and circumstances of the case before us we cannot give the court's findings such interpretation.

In *Hajny v. Robinson Milling Co.,* 156 Kan. 506, 134 P. 2d 398, it was held:

"In an action tried by the court, which makes findings of fact and conclusions of law, the conclusions of law should be supported by the findings made." (Syl.)

This action was predicated upon the injury and damage resulting to plaintiffs on account of the plant's operation, and it is essential, of course, that its operation, which is sought to be enjoined, produce that result in order for plaintiffs to prevail. In our opinion conclusion of law number 2, and the judgment rendered pursuant thereto, are not supported by the findings of fact.

It therefore follows that the judgment of the lower court is reversed with directions to vacate and set aside the permanent injunction and to enter judgment for defendant.