(75 P.3d 1228)

No. 89,693

CITY OF WICHITA, KANSAS, *Appellee*, v. SCOTT A. SMITH, *Appellant*.

—

Opinion filed August 22, 2003.

*Robert W. Kaplan*, of Kaplan, McMillan and Harris, of Wichita, for the appellant.

*Sharon L. Dickgrafe*, assistant city attorney, and *Gary E. Rebenstorf*, city attorney, for the appellee.

Before PIERRON, P.J., GREEN, J., and JOHN J. BUKATY, JR., District Judge, assigned.

PIERRON, J.: Scott A. Smith appeals the conviction of a violation of a noise ordinance of the City of Wichita (City).

On January 18, 2002, at about 11:30 p.m., Harlin and Janet Gray called the Wichita Police to complain about the excessive noise coming from a business establishment known as "Central Brews and Blues" (Club). The officer reported the music from the club

could be heard while standing inside the front room of the Grays' residence. Gray's affidavit stated he had heard loud noises from rock bands from 9:30 p.m. to 2 a.m. continuously for years. The officer contacted Smith, who identified himself as the person in charge of the club.

Smith was issued a criminal complaint for "[a]llow[ing] to be made or continued loud noise by use of a loudspeaker or sound amplifier which created a nuisance or interfered with the use or enjoyment of property of any person of reasonable sensibilities residing in or occupying the area" under Wichita city ordinance 7.41.010(a) (2003).

The club provided a forum for musicians to play live music and had a cabaret license properly issued by the City. The license states:

"The person, firm or corporation named below is granted this business certificate pursuant to the provisions of the City Business License Ordinances to engage in, carry on or conduct the business, trade, calling, profession, exhibition or occupation described below. Issuance of the certificate is not an endorsement, nor certification of compliance with other ordinances or laws."

Smith pled no contest to the charge and was found guilty of violating the City's loud noise ordinance. He was sentenced to 90 days in jail and fined $250 and court costs. Smith appealed his municipal conviction to the district court.

Following a bench trial on September 4, 2002, the district court found Smith guilty of the loud noise ordinance violation and ordered him to pay a fine of $250 and municipal court costs of $108. The court also stated it "stays imposition of sentence for 30 days to allow an appeal, if [the defendant] desires. Upon passage of 30 days, if no appeal is filed [the defendant] will have 90 days to pay said fine and costs."

Smith filed a notice of appeal to the Court of Appeals on October 4, 2002.

The Court of Appeals ordered the parties to show cause why the appeal should not be dismissed for lack of jurisdiction. The record shows the sentence was pronounced on September 4, 2002, but the notice of appeal was not filed until October 4, 2002, beyond the 10-day limitation of K.S.A. 22-3608(c).

Smith responded by claiming that the trial court stayed the imposition of the sentence for 30 days to allow an appeal; therefore, his appeal filed within the 30-day period was timely. On the other hand, the City claims the appeal was untimely because even though the parties agreed to allow 30 days to file an appeal, that agreement did not grant jurisdiction to the Court of Appeals. The appeal was retained with the order that parties were to brief the jurisdiction issue.

Whether jurisdiction exists is a question of law over which the appellate court's scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000). The right to appeal is entirely a statutory right; the Court of Appeals has only such appellate jurisdiction as is conferred by statute pursuant to the Kansas Constitution, and when the record discloses a lack of jurisdiction, it is the duty of this court to dismiss the appeal. See *State v. Ji*, 255 Kan. 101, 102-03, 872 P.2d 748 (1994).

Smith argues this court has jurisdiction to hear his appeal because the trial court extended the time to file a notice of appeal pursuant to *Schroeder v. Urban*, 242 Kan. 710, 750 P.2d 405 (1988). As the City points out, *Schroeder* dealt with an extension of time for filing an appeal in civil cases within the 30-day period fixed by K.S.A. 60-2103(a). The *Schroeder* court applied the doctrine of unique circumstances to allow an appeal which was otherwise untimely filed if the appellant reasonably and in good faith relied upon judicial action seemingly extending the appeal period and filed a notice of appeal within the period apparently judicially extended. 242 Kan. 710, Syl.

In *State v. Moses*, 227 Kan. 400, 607 P.2d 477 (1980), the Kansas Supreme Court held the trial court had no jurisdiction to grant an extension of time to file a notice of appeal under K.S.A. 60-2103(a) in a criminal proceeding.

The *Moses* court noted:

"The court's order does not derive its effectiveness from the journal entry, or from any act of the clerk, it is effective *when announced*. The defendant is personally present, and thus knows that at that moment he or she has been sentenced, fined, or placed on probation, or that imposition of sentence has been suspended." (Emphasis added.) 227 Kan. at 402-03.

The *Moses* court appears to be saying that suspending imposition of the sentence does not alter the effective date of sentencing for the purpose of starting the clock running for the purpose of appeal.

Also, contrary to Smith's argument, the trial court apparently did not grant an extension to file a notice of appeal for 30 days. The court was probably aware that it did not have that authority. Instead, it set deadlines for Smith to pay fines if an appeal was not filed. The sentence was pronounced from the bench on September 4, 2002, and Smith had 10 days from then to file his notice of appeal. Smith does not argue that he or his counsel was unaware of the right to appeal under *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982).

This appeal could be dismissed for lack of jurisdiction. However, for reasons of judicial economy, we will address the issues raised.

Wichita city ordinance 7.41.010 (2003), "Loud and unnecessary noise prohibited," states in pertinent part:

"(a) It is unlawful for any person to make, continue, or allow to be made or continued, any excessive, unnecessary, unusual or loud noise which creates a nuisance or injures or endangers the comfort, repose, health or safety of others, or which interferes with the use or enjoyment of property of any person of reasonable sensibilities residing in or occupying the area unless the making and continuing of such noise is necessary for the protection and preservation of property or the health and safety of some individual.

"(b) The following acts, which enumeration shall not be deemed to be exclusive, are hereby declared to be noise nuisances in violation of this section and are unlawful:

(1) The playing or permitting or causing the playing of any radio, radio receiving set, television, phonograph, 'boom box,' loudspeaker, drum, juke box, nickelodeon, musical instrument, sound amplifier or similar device which produces, reproduces, or amplifies sound when done in such a manner or with such volume, intensity, or with continued duration so as to annoy, to distress, or to disturb the quiet, comfort, or repose of any person of reasonable sensibilities within the vicinity or hearing thereof. *This subsection shall not apply to persons who have written authorization for an event which includes use of such a device, or to the police or public authorities who are using such a device in the performance of their duties.*" (Emphasis added.)

Smith argues the club was providing live entertainment for its guests on the night in question and the City should have applied subsection (b)(1) instead of (a) to charge him with the violation.

Smith further argues he held a cabaret license which allowed the business to play live amplified music; therefore, he could not be found guilty of loud noise ordinance violation under the exception of (b)(1).

The City argues Smith failed to establish or present evidence in the record on appeal to show that he in fact had a cabaret license at the time of his alleged violation of the city ordinance. The City claims this issue is not properly before the court and must be disregarded. We disagree with the City's argument on this issue. Smith raised this issue in his trial brief before the district court. We will, therefore, address it.

The cabaret license on its face states:

"The person, firm or corporation named below is granted this business certificate pursuant to the provisions of the City Business License Ordinances to engage in, carry on or conduct the business, trade, calling, profession, exhibition or occupation described below. *Issuance of the certificate is not an endorsement, nor certification of compliance with other ordinances or laws.*" (Emphasis added.)

Just because the club obtained a cabaret license to provide live entertainments for guests does not mean it has a total exemption from the enforcement of the loud noise ordinance. The licence itself makes this clear. No law supports Smith's claim that the holder of a cabaret license could not be found guilty of violation of the noise ordinance while engaging in activities which were permitted under the license.

Also, the exception in (b)(1) which Smith claims is applicable refers to an authorization "for the event" in which some sound producing device is utilized. This appears to refer to a single, special occurrence for which permission is needed. The cabaret license is issued for operation an of ongoing business and (b)(1) is not applicable here.

Smith also argues that 7.41.020 (2003) and 7.41.030 (2003) of the overall "noise" ordinance, Chapter 7.41, were not complied with in determining whether the noise in question was too loud.

The ordinance provisions cited read as follows in pertinent part:

"7.41.020 Classification and measurement of noise
"For the purposes of determining and classifying any noise from a fixed, stationary source as loud, unusual or unnecessary as declared to be unlawful and

prohibited by Section 7.31.010(a) herein, the following test measurements and requirements may be applied:

"(a) Noise occurring within the jurisdiction of the city shall be measured at a distance of at least twenty-five feet from a noise source if located within the public right-of-way, and if the noise source is located on private property or property other than the public right-of-way, at least twenty-five feet from the property line of the property on which the noise source is located.

"(b)(1) The noise shall be measured on the 'A' weighing scale on sound level meter of standard design and quality and having characteristics established by the American National Standards Institute.

(2) For purposes of this section, measurements with sound level meters shall be made when the wind velocity at the time and place of such measurement is not more than five miles per hour, or twenty-five miles per hour with a wind screen.

(3) In all sound level measurements consideration shall be given to the effect of the ambient noise level created by the encompassing noise of the environment from all sources at the time and place of such sound level measurement. (Ord. No. 41-918 § 2)"

"7.41.030 Excessive noise levels.

"(a) A noise measured or registered as provided herein from any source not exempted by this chapter at a level which is equal to or in excess of the db(A) established for the time period and zones listed below or that exceeds the background level by five db(A), whichever is greater, is declared to be excessive, unusual, loud and unnecessary, for the purposes of Section 8.41.010 [*sic*]:

| Zone | 8:00 a.m. to next 10.00 p.m. | 10:00 p.m. to next 8:00 a.m. |
|---|---|---|
| Residential | 55db(A) | 50db(A) |
| Commercial | 60db(A) | 55db(A) |
| Light industrial | 70db(A) | 65db(A) |
| Industrial | 80db(A) | 75db(A) |

Old Town district as set forth in subsection (b)

"Background noise means noise from all sources other than that under specific consideration, including traffic operating on public thoroughfares, and is established by measuring the noise level over a fifteen-minute period of time."

Smith argues that the specific measurement provisions would require the City to measure the noise being produced to see if it exceeded the regulatory limits, which was not done.

We believe Smith's argument fails. The ordinance states that "the following test measurements and requirements *may* be applied." (Emphasis added.) We read this language to mean much

the same as the standards for determining whether a person is unlawfully driving under the influence of alcohol. Certain levels of alcohol in the blood, or noise in the city, are presumptively a violation of the law when measured in prescribed ways. However, there can be violations of either the drunk driving law or the noise ordinance without the measurements, if the factfinder determines the prohibited conduct occurred.

Smith also argues that the City's noise ordinance is unconstitutionally vague. We disagree.

Whether the ordinance is constitutional presents a question of law over which this court's review is unlimited. See *City of Wichita v. Edwards*, 23 Kan. App. 2d 962, 964, 939 P.2d 942 (1997).

The general principles and guidelines to be followed in considering the constitutionality of a statute or ordinance have been enumerated many times:

"The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination." *City of Wichita v. Lucero*, 255 Kan. 437, 442, 874 P.2d 1144 (1994) (quoting *Moody v. Board of Shawnee County Comm'rs*, 237 Kan. 67, 74, 697 P.2d 1310 [1985]).

Smith alleges the language in subsection (a) is so vague as to the conduct prohibited that it is unconstitutional and unenforceable, relying on the holding in *Luna v. City of Ulysses*, 28 Kan. App. 2d 413, 17 P.3d 940 (2000). Based on subsection (a), the complaint alleged that Smith "[a]llow[ed] to be made or continued, loud noise . . . which . . . interfered with the use or enjoyment of property of any person of reasonable sensibilities residing in or occupying the area."

"The standard for determining whether a statute regulating business is unconstitutionally vague is a common-sense determination of fairness. If an ordinary person exercising common sense can understand and comply with the statute, it is constitutional. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d

368 (1992). In determining whether an ordinance is void for vagueness, two inquires are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *State v. Lackey*, 232 Kan. 478, 480, 657 P.2d 40 (1983)." *Busby, Inc. v. Kansas Dept. of Agriculture*, 29 Kan. App. 2d 555, 562, 29 P.3d 441 (2001).

Luna was convicted of a violation of the loud noise ordinance of the City of Ulysses, which stated:

" 'Section 1. Loud Noise Prohibited. It shall be unlawful for any person to make or cause or permit to be made upon any public or private property including public streets, alleys, thoroughfares or parks, any unnecessarily loud or excessive noise or sound which is physically or mentally annoying or disturbing to another person or persons or which disturbs the peace, quiet, or comfort of another person or persons.' " *Luna*, 28 Kan. App. 2d at 413-14.

Luna argued the ordinance lacked an objective standard from which to determine what was "loud," "excessive," "mentally annoying," and "disturbing." The Court of Appeals agreed with Luna and held:

"We conclude the loud noise ordinance of the City does not give fair warning to those potentially subject to its reach because there are no *objective* standards imparted. Loaded phrases and words in the ordinance 'unnecessarily loud,' 'excessive,' 'mentally annoying,' and 'disturbing' do not provide fair warning to an individual of prohibited conduct.

"The ordinance also provides that if the noise is disturbing to 'another person or persons,' then the individual responsible for the noise is in violation, regardless if the complainants have reasonable grounds to complain. As was true in *Bryan*, the absence of an objective standard subjects the defendant to the particular sensibilities of the complainant. The door is left open to arbitrary and discriminatory enforcement of noisy speech, thus, potentially ensnaring constitutionally protected speech." 28 Kan. App. 2d at 416.

Here, Smith argues the language from the city ordinance to describe the volume of the noise as "excessive, unnecessary, unusual or loud noise" is vague and fails to provide fair warning to an individual. Second, Smith argues the ordinance's reference to a complainant of "reasonable sensibilities" leaves the door open to arbitrary and discriminatory enforcement.

In *State v. Bryan*, 259 Kan. 143, 155, 910 P.2d 212 (1996), the court found a portion of the stalking statute (K.S.A. 1994 Supp.

21-3438) unconstitutional because it failed to apply any objective standard in defining the terms "alarms," "annoys," and "harasses." The court noted different persons have different sensibilities, and conduct which annoyed or alarmed one person might not annoy or alarm another. If the victim had extraordinary sensibilities, the defendant could be guilty of stalking even though a reasonable person in the same situation would not be alarmed, annoyed, or harassed by the defendant's conduct. 259 Kan. at 155.

The pertinent part of the Wichita ordinance utilizes the standard of "any person of reasonable sensibilities." The existence of the reasonable person standard in the ordinance is a distinguishing factor in this case from *Luna*. The City cites the decisions of the other jurisdictions which have upheld the constitutionality of similar language in loud noise ordinances. Furthermore, this court has upheld the same ordinance as not void for vagueness. *City of Wichita v. Martin*, Case No. 79,832, unpublished opinion filed December 23, 1999.

The city ordinance prohibiting loud noise contains the reasonable persons standard without leaving the door open for arbitrary and discriminatory enforcement, and it is not unconstitutionally vague.

The record is sparse but from what does appear we find there was sufficient evidence presented to sustain the court's finding on appeal.

Affirmed.