(274 P.3d 680)
No. 105,962

CITY OF LINCOLN CENTER, *Appellant*, v. FARMWAY CO-OP, INC.
and FARMWAY STORAGE #1, LLC, *Appellees*.

Opinion filed April 12, 2012.

*Daniel D. Metz*, city attorney, for appellant.

*David M. Traster*, of Foulston Sieflin LLP, of Wichita, for appellees.

*Sandra Jacquot* and *Donald L. Moler*, of League of Kansas Municipalities, of Topeka, for *amicus curiae* League of Kansas Municipalities.

*Robin K. Carlson* and *Daniel D. Crabtree*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, for *amicus curiae* Kansas Grain & Feed Association.

*Brent E. Haden*, of Haden & Byrne LLC, of Columbia, Missouri, for *amicus curiae* Kansas Cooperative Counsel.

Before GREENE, C.J., PIERRON and MARQUARDT, JJ.

PIERRON, J.: The City of Lincoln Center (City) appeals the district court's decision finding the City's noise and nuisance ordinances were unconstitutionally vague. Charges filed against Farmway Co-Op, Inc., and Farmway Storage #1, LLC (collectively Farmway), under the ordinances were dismissed. The City argues the ordinances are not vague and constitute a valid exercise of the City's police power. We affirm the district court's decision.

With some minor disagreements, the parties really do not dispute the facts. This case involves legal questions concerning the constitutionality of nuisance ordinances.

Farmway owns and operates a grain elevator located within the City of Lincoln Center. Lincoln Center is a small rural farming community in central Kansas. The neighborhood surrounding the Farmway elevator is residential. In December 2008, Farmway applied for a building permit to construct a new grain storage bin adjacent to the existing facility. The letter of application stated:

"This structure will be 74' in diameter and 124' tall with 12" thick reinforced concrete walls. The above structure is being built for Farmway Storage LLC. #1 which is a producer financed grain storage structure with Farmway Coop, Inc. adding all machinery and related components. We seek to obtain a building permit to start construction of this $1,502,000 project that will give much needed grain storage to our Lincoln Branch. As I mentioned this is a farmer/producer joint venture that will bring rewards to every grain producer in the Lincoln area. The structure is to be built of existing property that includes all of blocks 8 and 9 minus lots 1 and 2 in the McFarland Park Addition. I have not included the permit fees as I am unsure of these costs at this time. We hope this project will be a great

addition to the City of Lincoln and the producers in the area and also help control some dust and noise concerns for the neighborhood. If approved we plan to proceed with this project and have it completed before July of 2009. Your help in this matter would be greatly appreciated."

After the City granted Farmway a construction permit, Farmway constructed the new grain bin and it went into operation on July 14, 2009. From that day forward, nearby residents complained about the increased noise level from the aeration drying fans and the increased grain dust and truck dust in the air. On July 27, 2009, Dawn and Melvin Harlow filed a noise complaint against Farmway. The Harlows described the increased noise levels from the new grain bin and its effect on their everyday life. Alan and Karen Hunter explained how their yard and vehicles were covered with grain dust, their increased health problems, and how the new fans on the grain bin sounded like a jet engine. T.J. Jonsson explained how the increased grain dust caused severe reactions to his son who suffered from wheat and milo dust allergies. Jonsson started a petition drive in 2010 to encourage local leaders to oppose any further Farmway expansion and to correct what he described as public nuisances. The petition was signed by 51 people.

Farmway is a voluntary participant in the OSHA 21-D program administered by the Kansas Department of Labor (KDOL), a free service in which employee health and safety consulting is provided to participants. Farmway requested a consultation visit for the purpose of determining its compliance with employee safety regulations regarding noise and air contaminates at its Lincoln Center elevator facility. Helen Cook, a certified industrial hygienist with KDOL, made two scheduled visits to the facility—February 25 and March 15, 2010. She measured noise levels around the perimeter of the elevator facility at less than 80 decibels, which does not present an employee health concern. She conducted air sampling for particulates and silica, and no employee overexposure was indicated.

In response to the complaints of excessive noise and dust, Stan Marshall, Air Quality Representative for the Kansas Department of Health and Environment (KDHE), made two unannounced visits to the Farmway elevator, one on January 29, 2009 (prior to the

expansion) and one on December 2, 2009 (after the expansion). Each of the visits lasted 30-40 minutes. The dust testing method applicable for the Farmway facility is an opacity reading, which measures the percentage of sunlight being blocked by any emissions. On both visits, the Farmway facility tested well within applicable limits and there were no violations reported.

On December 9, 2009, the City charged Farmway with violating City ordinances regarding excessive loud noises and nuisances. Count I of the City's complaint alleged that between July 16, 2009, and December 3, 2009, Farmway willfully, unlawfully, and intentionally did "make, continue, maintain or cause to be made or continue an excessive, unnecessary, unreasonable or unusually loud noise which annoys, disrupts, injures or endangers the comfort, repose, health, peace or safety of others within the City of Lincoln Center, Lincoln County, Kansas, in violation of ordinance #643."

Count II of the City's complaint alleged that between July 16, 2009, and December 3, 2009, Farmway willfully, unlawfully, and intentionally did

"maintain a public nuisance by act or failure to perform a legal duty intentionally causing or permitting a condition to exist which injures or endangers the public health, safety, or welfare, namely the excessive, unnecessary, unreasonable or unusually loud noise, and by causing or permitting excessive air pollution and contamination from grain dust all generated by, for or from the new concrete grain storage bin facility."

located in the City of Lincoln Center, Lincoln County, Kansas, in violation of Sections 9.5 and 9.6 of the Uniform Public Offense Code for Kansas Cities edition of 1999, adopted by ordinance #633.

After a full trial, the municipal court found Farmway guilty on both counts. Each defendant was ordered to pay a fine of $100 on Count I and a fine of $300 on Count II. Costs in the amount of $66 were assessed jointly and severally against the defendants. Farmway timely appealed the convictions to district court and then promptly filed a motion to dismiss the charges, arguing the ordinances were void for vagueness. The district court granted the motion to dismiss finding as follows:

"The City's ordinance provides that if a noise 'annoys, disrupts . . . others within the City' then a violation of the ordinance exists. This language of the ordinance

fails to provide an objective standard. There is no guarantee the complainant has reasonable grounds to complain of the noise and there is no accounting for the individual sensibilities of the complainant. The City's ordinance, unlike the Wichita ordinance which utilized the standard of 'any person of reasonable sensibilities,' leaves the door open to arbitrary and discriminatory enforcement. Accordingly, the City's Ordinance No. 643 is void for being unconstitutionally vague.

. . . .

"An ordinance which proclaims to prohibit any act or failure to act that intentionally causes or permits a condition to exist which injures or endangers the public health, safety or welfare does not appear sufficiently definite or specific to provide fair warning of prohibited conduct. What is the prohibited conduct? The answer is any act that 'injures or endangers the public health, safety or welfare.' The answer is so vague and indefinite that it fails to warn.

"The City's nuisance ordinances also fail to guard against arbitrary and discriminatory enforcement. The ordinances provide no guidelines or constraints on those that enforce it. One must guess at the meaning of these ordinances and its application may depend upon those attempting to enforce it. Accordingly, this Court finds that the City's nuisance ordinances are unconstitutionally vague as they do not put the public on notice of the conduct that is proscribed and do not contain objective standards to prevent arbitrary and discriminatory enforcement."

The City appeals the dismissal of the complaints against Farmway.

## Is Lincoln Center's Noise Ordinance Unconstitutionally Vague?

The City first argues the district court erred in finding the noise ordinance is unconstitutional and in failing to consider and apply the material differences between the Lincoln noise ordinance and the ordinance found unconstitutional in *Luna v. City of Ulysses*, 28 Kan. App. 2d 413, 17 P.3d 940 (2000).

Whether an ordinance is constitutional presents a question of law over which this court's review is unlimited. See *City of Wichita v. Edwards*, 23 Kan. App. 2d 962, 964, 939 P.2d 942 (1997).

"The standard for determining whether a statute regulating business is unconstitutionally vague is a common-sense determination of fairness. If an ordinary person exercising common sense can understand and comply with the statute, it is constitutional. *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992). In determining whether an ordinance is void for vagueness, two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *State v. Lackey*, 232 Kan. 478,

480, 657 P.2d 40 (1983)." *Busby, Inc. v. Kansas Dept. of Agriculture,* 29 Kan. App. 2d 555, 562, 29 P.3d 441, *rev. denied* 272 Kan. 1417 (2001).

At issue in this case is Ordinance No. 643 of the City of Lincoln Center. It provides in pertinent part: "Section 1. DISTURBING THE PEACE. It is unlawful for any person to make, continue, maintain or cause to be made or continue any excessive, unnecessary, unreasonable or unusually loud noise which either annoys, disrupts, injures or endangers the comfort, repose, health, peace or safety of others within the City."

The general principles and guidelines to be followed in considering the constitutionality of a statute or ordinance have been enumerated many times:

" 'The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done. A statute should not be stricken down unless the infringement of the superior law is clear beyond substantial doubt. The propriety, wisdom, necessity and expediency of legislation are exclusively matters for legislative determination.' " *City of Wichita v. Lucero,* 255 Kan. 437, 442, 874 P.2d 1144 (1994) (quoting *Moody v. Board of Shawnee County Comm'rs,* 237 Kan. 67, 74, 697 P.2d 1310 [1985]).

The City alleges the district court failed to apply the material differences in the ordinance in *Luna.* Luna was convicted of a violation of the loud noise ordinance of the City of Ulysses, which stated:

" 'Section 1. Loud Noise Prohibited. It shall be unlawful for any person to make or cause or permit to be made upon any public or private property including public streets, alleys, thoroughfares or parks, any unnecessarily loud or excessive noise or sound which is physically or mentally annoying or disturbing to another person or persons or which disturbs the peace, quiet; or comfort of another person or persons.' " 28 Kan. App. 2d at 413-14.

Luna argued the ordinance lacked an objective standard from which to determine what was "loud," "excessive," "mentally annoying," and "disturbing." 28 Kan. App. 2d at 414. The Court of Appeals agreed with Luna and held:

"We conclude the loud noise ordinance of the City does not give fair warning to those potentially subject to its reach because there are no objective standards imparted. Loaded phrases and words in the ordinance 'unnecessarily loud,' 'excessive,' 'mentally annoying,' and 'disturbing' do not provide fair warning to an individual of prohibited conduct.

"The ordinance also provides that if the noise is disturbing to 'another person or persons,' then the individual responsible for the noise is in violation, regardless if the complainants have reasonable grounds to complain. As was true in *Bryan*, the absence of an objective standard subjects the defendant to the particular sensibilities of the complainant. The door is left open to arbitrary and discriminatory enforcement of noisy speech, thus, potentially ensnaring constitutionally protected speech." 28 Kan. App. 2d at 416.

In *State v. Bryan*, 259 Kan. 143, 155, 910 P.2d 212 (1996), as cited in *Luna*, the court found a portion of the stalking statute (K.S.A. 1994 Supp. 21-3438) unconstitutional because it failed to apply any objective standard in defining the terms "alarms," "annoys," and "harasses." The court noted different people have different sensibilities, and conduct which annoyed or alarmed one person might not annoy or alarm another. If the victim had extraordinary sensibilities, the defendant could be guilty of stalking even though a reasonable person in the same situation would not be alarmed, annoyed, or harassed by the defendant's conduct. 259 Kan. at 155.

In *City of Wichita v. Smith*, 31 Kan. App. 2d 837, 75 P.3d 1228 (2003), the defendant music bar owner was convicted of violating the following Wichita city ordinance 7.41.010(a) (2003):

" '(a) It is unlawful for any person to make, continue, or allow to be made or continued, any excessive, unnecessary, unusual or loud noise which creates a nuisance or injures or endangers the comfort, repose, health or safety of others, or which interferes with the use or enjoyment of property of any person of reasonable sensibilities residing in or occupying the area unless the making and continuing of such noise is necessary for the protection and preservation of property or the health and safety of some individual.' " 31 Kan. App. 2d at 840.

Smith argued the language from the city ordinance to describe the volume of the noise as "excessive, unnecessary, unusual or loud noise" was vague and failed to provide fair warning to an individual. Second, Smith argued the ordinance's reference to a complainant

of "reasonable sensibilities" leaves the door open to arbitrary and discriminatory enforcement.

The *Smith* court upheld the conviction and concluded the noise ordinance was not unconstitutionally vague because the ordinance prohibiting loud noise contained the reasonable persons standard without leaving the door open for arbitrary and discriminatory enforcement. The court stated:

> "The pertinent part of the Wichita ordinance utilizes the standard of 'any person of reasonable sensibilities.' The existence of the reasonable person standard in the ordinance is a distinguishing factor in this case from *Luna*. The City cites the decisions of the other jurisdictions which have upheld the constitutionality of similar language in loud noise ordinances. Furthermore, this court has upheld the same ordinance as not void for vagueness. *City of Wichita v. Martin*, Case No. 79,832, unpublished opinion filed December 23, 1999." 31 Kan. App. 2d at 845.

At one end of the constitutional spectrum, we have cases like *Luna* and *Bryan* in which the courts found the ordinances constitutionally deficient because of the complete lack of an objective standard. At the other end of the spectrum lies *Smith* and its expressly stated-objective standard clarifying the ordinance's application to " 'any person of reasonable sensibilities.' " *Smith*, 31 Kan. App. 2d at 840. This case falls somewhere in between *Luna* and *Smith* because of the Lincoln ordinance's use of the word "unreasonable" in describing one type of loud noise in what appears to be an attempt to create an objective standard. The district court held the inclusion of "unreasonable" in the Lincoln ordinance was not determinative of the issue because the ordinance still failed to provide an objective standard of reasonable grounds to complain of the noise. We agree.

The City emphasizes our duty to uphold an ordinance "if there is any reasonable way to construe the ordinance as constitutionally valid." *City of Wichita v. Hughes*, 12 Kan. App. 2d 621, 623, 752 P.2d 1086 (1988). Since this ordinance does not infringe upon explicit constitutional guarantees, the City cites *Boyles v. City of Topeka*, 271 Kan. 69, 72, 21 P.3d 974 (2001), where the court states that an ordinance should be upheld unless it " 'is impermissibly vague in all of its applications.' " The City argues the distinguishing words in the Lincoln ordinance that separate it from the *Luna*

ordinance are "unreasonable . . . loud noise which . . . injures or endangers the . . . health . . . or safety of others within the City." The City argues that since these words provide the "reasonable-ness" standard, there is no need for additional "reasonable sensibilities" language as was the case in *Smith*.

In *State v. Fisher*, 230 Kan. 192, 631 P.2d 239 (1981), as relied upon by the City, the court discussed the word "unreasonably" in the context of an endangering of a child statute and whether the defendant was guilty of " 'unreasonably causing or permitting a child . . . to be placed in a situation in which its life, body or health may be injured or endangered.' " The *Fisher* court found the statute was not unconstitutionally vague because:

" '[U]nreasonably,' as that word is used in K.S.A. 21-3608(1) (b), is the doing or the omitting of some action contrary to reason, the doing of or omitting to do something that the average person, possessing ordinary mental faculties, would not have done or would not have omitted under all of the attendant and known circumstances." 230 Kan. at 194.

The *Fisher* court cited to other statutory provisions demonstrating "reasonableness," namely driving "at a speed greater than is reasonable and prudent under the conditions" (K.S.A. 8-1557), a "reasonable belief" standard for compulsion, self-defense, and defense of property (K.S.A. 21-3209, K.S.A. 21-3211, K.S.A. 21-3212), and an officer's use of force reasonably necessary to effect an arrest (K.S.A. 21-3215). 230 Kan. at 193.

The City argues that contrary to *Luna*, the Lincoln ordinance clearly gives fair warning to both corporate and private citizens of the City that they are required to conform to noise limits that are not unreasonable and that do cause injury to or endanger the health, peace, or safety of others within the City.

*Amicus Briefs*

The Kansas Cooperative Council (KCC) filed an *amicus* brief on behalf of Farmway. The KCC serves as a leading trade organization for Kansas agricultural and farm supply cooperatives. The KCC argues there are many facilities similar to Farmway's grain elevator in Kansas and most produce at least some dust and noise as a normal part of daily operations. If the ordinances in question are

found to be constitutional, the KCC argues Kansas municipalities will have the power to criminally sanction these facilities upon the complaint of unusually sensitive individuals and make day-to-day operations very difficult for cooperative members.

The KCC argues the ordinances do not protect against arbitrary and discriminatory enforcement. Just as in *Luna*, the KCC argues the ordinances do not contain a reasonable person standard for the complaining party and one is left wondering which action will be considered to have injured or endangered the public health or safety, and by which standards such decision will be made. The KCC contends that *Smith* controls these types of cases and establishes a reasonable person standard for all valid ordinances. The KCC argues that the word "unreasonable" in the ordinance does not make it constitutional under *Smith* and *Luna*. The KCC contends the City's ordinance still shifts the test of reasonableness back to the activity in question and not to the complaining party as in *Smith*. The KCC argues that placing the question of reasonableness back on the regulated activity rather than on the sensibilities of the complaining party still leaves a situation in which an unreasonably sensitive party can create criminal liability for the defendant merely by complaining that they are offended by a given practice.

The KCC argues the practical implications of the City's ordinance are significant. Grain storage and processing facilities are important pieces of Kansas' agricultural industry. Threatening the grain storage industry could cause the collapse of the agricultural economy. Fewer operational grain storage facilities would lead to increased transportation costs for farmers and grain handlers and a loss of agricultural jobs. If the ordinances are upheld, businesses and individuals run the risk of being cited and called into criminal court on the complaints of very small groups of people or even one hyper-sensitive individual.

The Kansas Grain & Feed Association (KGFA) filed an *amicus* brief on behalf of Farmway. KGFA is a voluntary association whose members include businesses engaged in receiving, storing, and processing grain in Kansas. KGFA argues that if the City is successful on appeal, municipalities across the state will have license to punish grain storage facilities at the whim of anyone who com-

plains about noise or dust, even in spite of efforts made by the facilities to address any such concerns, regardless of whether such complaints are reasonable. KGFA states that Farmway had no way to know whether the noise or dust actually constituted a violation of the ordinances. *As measured by the KDOL and the KDHE, the noise and dust related to Farmway's operations were within acceptable limits.* Yet the City charged Farmway with violations of both noise and public nuisance ordinances.

KGFA argues there is an industry impact for consideration in this case. Kansas has statutes declaring the policy of this state to conserve and protect and encourage the development and improvement of farmland for the production of food and other agricultural products. KGFA states that an unconstitutional ordinance that negatively impacts a vital agricultural industry does nothing to further this policy. KGFA recognizes that most Kansas cities have adopted the Uniform Public Offense Code. However, KGFA states there are hundreds of Kansas grain elevators located within city limits and noise and dust are an inherent part of handling, storing, and processing grain, and state and federal agencies currently regulate noise and air quality.

KGFA insists that if the ordinances in this case are allowed to stand, the facilities engaged in these operations will potentially face criminal charges for violating public nuisance ordinances without any advance way to gauge whether the elevator's noise or dust exceeds the acceptable limits.

*Analysis of the Use of the Word "Unreasonable"*

To strike this ordinance, we would have to conclude that it clearly appears to be unconstitutional. *Boyles,* 271 Kan. at 72; *Luna,* 28 Kan. App. 2d at 414. However, we must strictly construe ordinances imposing criminal sanctions and any reasonable doubt is decided in favor of the accused. *State v. Jackson,* 291 Kan. 34, 40, 238 P.3d 246 (2010). We conclude the Lincoln noise ordinance does not give fair warning to those potentially subject to its reach because there are no objective standards imparted. Just as it was the case in *Luna,* the Lincoln ordinance contains "[l]oaded phrases and words." 28 Kan. App. 2d at 416. The difference here is that

the Lincoln ordinance contains *more* of these "[l]oaded phrases and words." In substance, the Lincoln ordinance and the ordinance in *Luna* are really no different.

The inclusion of the word "unreasonable" in the Lincoln ordinance does not cure its vagueness. The City cites cases from other jurisdictions that have prohibited "unreasonable noise" as disorderly conduct and found no unconstitutional infirmities. See *People v. Fitzgerald*, 194 Colo. 415, 573 P.2d 100 (1978) (disorderly conduct by making " 'unreasonable noise in a public place or near a private residence that he has no right to occupy' "); *State v. McDermott*, 135 Vt. 47, 373 A.2d 510 (1977) (reversing charges based on Vt. Stat. Ann. tit. 13, § 1026 [1971] which states: "A person who, with intent to cause public inconvenience, or annoyance or recklessly creating a risk thereof . . . [2] Makes unreasonable noise.").

Even if the City is correct that the Lincoln ordinance is distinguishable from the ordinance in *Luna* because of the inclusion of "unreasonable" in describing the quality of noise, the critical piece of the Lincoln ordinance is still the fact that it only applies where the noise "either annoys, disrupts, injures or endangers" the comfort, repose, health, peace or safety of others within the City. It is the ordinance's application language that makes it vague. There is no objective standard by which to judge whether the complainants have reasonable grounds to complain about the noise either annoying, disrupting, injuring, or endangering them. We agree with the district court that this language fails to provide an objective standard. The absence of an objective standard subjects the defendant to the particular sensibilities of the complainant, not something that is geared toward a "reasonable sensibility" standard. Consequently, the ordinance does not adequately guard against arbitrary and discriminatory enforcement.

*Was the Nuisance Ordinance a Valid Exercise of the City's Police Power?*

The City also argues the nuisance ordinances are a valid exercise of the City's police power to legislate and govern such matters within its municipal borders.

The City's nuisance ordinance is the adoption of the provisions of sections 9.5 and 9.6 of the Uniform Public Offense Code published by the League of Kansas Municipalities (LKM).

"9.5 MAINTAINING PUBLIC NUISANCE. Maintaining a public nuisance is by act, or by failure to perform a legal duty, intentionally causing or permitting a condition to exist which injures or endangers the public health, safety or welfare. (K.S.A. 21-4106)

"Maintaining a public nuisance is a Class C violation.

"9.6 PERMITTING PUBLIC NUISANCE. Permitting a public nuisance is knowingly permitting property under the control of the offender to be used to maintain a public nuisance, as defined in Section 9.5 of this article. (K.S.A. 21-4107)

"Permitting a public nuisance is a Class C violation."

Our standard of review is the same as previously discussed in the context of the Lincoln noise ordinance. The constitutionality of an ordinance is a question of law with unlimited review. See *City of Wichita v. Edwards*, 23 Kan. App. 2d at 964. If an ordinary person exercising common sense can understand and comply with the statute, it is constitutional. *Boatright*, 251 Kan. 240, 243, 834 P.2d 368 (1992). In determining whether an ordinance is void for vagueness, two inquires are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *Busby, Inc.*, 29 Kan. App. 2d at 562.

The City argues the nuisance ordinances involve the City's duty to exercise its inherent police powers to prevent conditions within the city that injure or endanger the public health, safety, or welfare. The City maintains the district court's decision unnecessarily and unrealistically holds the City to unlimited requirements of foresight to predict precisely each and every activity or condition that would fall within the proscribed conduct before it could be abated or penalized as a nuisance by the City. The City states that the Home Rule Amendment to the Kansas Constitution provides that "Cities are hereby empowered to determine their local affairs and government." Kan. Const. art. 12, sec. 5(b).

*The League of Kansas Municipalities Amicus Brief*

The League of Kansas Municipalities (LKM) filed an *amicus* brief on behalf of the City. The LKM argues that a number of Kansas cases have opined on the nature of a public nuisance, what it encompasses, and how it is defined. See *Culwell v. Abbott Construction Co., Inc.*, 211 Kan. 359, 362, 506 P.2d 1191 (1973); *Hofstetter v. Myers, Inc.*, 170 Kan. 564, 568, 228 P.2d 522 (1951). LKM contends that the term public nuisance is one capable of . determination, if not precise definition. LKM argues that it is clear that Farmway knew very well that the dust and noise created by its business operation was a problem. This was evidenced during the building process and also by Farmway's request for evaluations by the KDOL and KDHE. LKM argues that for Farmway to claim that it did not have notice of the conduct that might constitute a nuisance is belied by its actions and statements. LKM states there is no constitutional vagueness because Farmway knew its conduct was creating a nuisance.

*Analysis on Public Nuisance Regulation*

In *Hofstetter*, 170 Kan. 564, the defendant appealed a judgment of the lower court granting a permanent injunction enjoining the defendant from operating a portable hot asphalt mixing plant because the plant's operation constituted a nuisance on account of the dust and obnoxious odors resulting for its operation. The court held that the finding by the district court that under certain wind conditions plaintiffs were inconvenienced by the dust, did not, under all of the facts and circumstances, meet the test of constituting a legal nuisance. 170 Kan. at 569. The court said:

"While the word nuisance is perhaps incapable of precise definition, yet in general it is held to be something which interferes with the rights of citizens, whether in person, property, or enjoyment of property, or comfort. It has also been held to mean an annoyance, and, in its broadest sense, that which annoys or causes trouble or vexation, that which is offensive or noxious, or anything that works hurt, inconvenience or damage. (See 66 C.J.S., Nuisances, § 1, p. 727). What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting.

Each case must of necessity depend upon its own particular facts and circumstances." 170 Kan. at 568.

The court in *Hofstetter* discussed the concept of whether the dust constituted a nuisance:

"As a general proposition it may be said that dust which substantially interferes with the comfortable enjoyment of adjacent premises constitutes a nuisance, provided it is sufficient to cause perceptible injury to persons or property. On the other hand, a reasonable amount of dust in a manufacturing community or industrial district does not necessarily constitute a nuisance even though it may cause some annoyance, and this is particularly true where the dust caused by the operation of a business is only occasional and the resultant injury slight. In other words, a given amount of dust in one locality well might be considered and held to be a nuisance, and not so in others, all depending upon the particular facts and circumstances. (39 Am. Jur., Nuisances, § 57, pp. 339, 340; 66 C.J.S., Nuisances, § 23, p. 777. See annotations in 3 A.L.R. 312; 11 A.L.R. 1401; and 8 A.L.R.2d 419.)" 170 Kan. at 568-69.

Except for *Hofstetter*, all the cases cited by the City involve specifically directed nuisance ordinances, not the general all-encompassing ordinance in this case. See *Boyles*, 271 Kan. 69 (public nuisance ordinance that prohibited the maintaining on private property of any garbage, rubbish, trash, refuse, junk, or other listed items which create an unsightly appearance); *Hearn v. City of Overland Park*, 244 Kan. 638, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989) (ordinance regulating the ownership of pit bulls within the city); *City of Colby v. Hurtt*, 212 Kan. 113, 117, 509 P.2d 1142 (1973) (involved a conviction under a zoning ordinance restricting the location of mobile homes); *City of Lyons v. Suttle;* 209 Kan. 735, 493 P.2d 9 (1972) (ordinance at issue, found to be within the police power of a municipality, prohibited consumption of cereal malt beverage in a vehicle, and prohibited transportation of open container of beverage); *State v. Johnson*, 196 Kan. 208, 410 P.2d 423 (1966) (nuisance statute concerning the maintenance of animal stables and sheds); *Grigsby v. Mitchum*, 191 Kan. 293, 380 P.2d 363 (1963), *cert. denied* 375 U.S. 966 (1964) (city ordinance prohibiting issuance of a pinball license); *Martin v. Davis*, 187 Kan. 473, 484, 357 P.2d 782 (1960) (exercise of valid police power by Supreme Court requiring a Kansas attorney who regularly practices

in another state to associate local counsel before making appearances in Kansas).

Farmway cites *State of New Jersey v. Golin,* 363 N.J. Super. 474, 480, 833 A.2d 660 (2003), where the court considered a general ordinance similar to the Lincoln ordinances as it applied to tree limbs blocking a sidewalk:

"The following matters, things, conditions or acts and each of them are hereby declared to be a nuisance and injurious to the health of the inhabitants of this municipality:

"(a) Any matter, thing, condition or act which is or may become detrimental or a menace to the health of the inhabitants of this municipality;

"(b) Any matter, thing, condition or act which is or may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality."

The court in *Golin,* in finding the ordinance was unconstitutionally vague, acknowledged that it would be impossible to draft an ordinance addressing all potential types of conduct posing a health hazard and observed that the United States Supreme Court requires municipalities to enact ordinances "directed with reasonable specificity toward the conduct to be prohibited." 363 N.J. Super. at 483-84 (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S. Ct. 1686, 29 L. Ed. 2d 214 [1971]). The *Golin* court gave the following advice:

"there is no reason that the municipality cannot enact a more specific ordinance to proscribe the objectionable conduct. Sidewalks and tree branches are at least as common in East Windsor as pigeons are in Atlantic City. If the obstruction of sidewalks by overhanging tree limbs presents a public nuisance, then it lies within the power of the local board of health to enact an ordinance specifically prohibiting such occurrences." 363 N.J. Super. at 484.

Farmway contends that even though the district court did not address whether the nuisance ordinances were facially invalid or invalid as applied, we can still address the matter within our unlimited review. Farmway states that the legislature has specified several criminal activities as common nuisances, including commercial gambling, promoting obscenity, and promoting prostitution for example. See K.S.A. 2010 Supp. 22-3901. Farmway argues that generating both noise and dust is common and affects the public

health, safety, or welfare only when generated in excess and over extended periods of time, and they were entitled to advance notice of the objective standards to which it was required to conform.

Farmway argues that state and federal governments have set specific limits for both noise and particulate emissions in the workplace. This is evident in both the inspections from the KDOL and KDHE. The record does not indicate, nor does the City argue, that the noise or dust levels measured by state officials have ever been out of compliance with acceptable standards. Farmway maintains that just like the disturbing the peace ordinance, the City's nuisance ordinance placed Farmway and others in the impossible position of guessing about the levels of noise or dust that will offend residents or City officials resulting in a criminal prosecution.

If an ordinary person exercising common sense can understand and comply with the ordinance, it is constitutional. *Boatright*, 251 Kan. at 243. In determining whether an ordinance is void for vagueness, two inquires are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *Busby, Inc.*, 29 Kan. App. 2d at 562.

The vagueness doctrine is premised on the notion that the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The prohibited conduct under the Lincoln nuisance ordinances criminalizes any conduct "which injures or endangers the public health, safety or welfare." This ordinance does not give fair warning to those persons potentially subject to it as to what conduct is criminalized. The district court stated the ordinance is "so vague and indefinite that it fails to warn." Further, the ordinance does not adequately guard against arbitrary and discriminatory enforcement. This appears to be apparent through the evidence, or lack thereof, that Farmway has ever been out of compliance with regulatory standards for dust and industrial noise under State and Federal standards.

Applying the remedial language in *Golin*, we find there is no reason that the City cannot enact a more specific ordinance to

proscribe the objectionable conduct involving dust and industrial noise and provide constitutionally acceptable objective standards for consideration of the conduct. We realize that small farm towns depend on the agricultural economy for its survival and vice versa—as seen by the many briefs filed by *amicus curiae*. However, "[s]idewalks and tree branches are at least as common in East Windsor as pigeons are in Atlantic City," 363 N.J. Super. at 484, as dust and industrial noise are in small rural farm towns. If dust and industrial noise present a public nuisance, then it lies within the power of the City to enact an ordinance specifically prohibiting such nuisance and defining objective standards to give anyone subject to its criminal penalties fair warning for what conduct will be prosecuted.

Affirmed.

\* \* \* \*

GREENE, C.J., and MARQUARDT, J., concur in the result.